JACKSON COUNTY BOARD OF ELECTION COMMISSIONERS, by and through its Members Tammy L. BROWN, William J. BAKER, Charles E. DUMSKY, and Michael D. WHITEHEAD, Appellant,

v.

CITY OF LEE'S SUMMIT, Missouri, Respondent.

No. WD 69074.

Missouri Court of Appeals, Western District.

Dec. 23, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2009.

Application for Transfer Denied March 31, 2009.

Bradley Alan Constance, Independence, MO, for appellant.

Paul Anthony Campo, Lee's Summit, MO, for respondent.

Before THOMAS NEWTON, C.J., and RONALD HOLLIGER and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

The Jackson County Board of Election Commissioners (the "Board" or "Election Board") appeals the circuit court's judgment which concluded that the City of Lee's Summit, Missouri, had the authority to request that an ordinance be placed on the ballot for voter approval at the November 7, 2006 election. Because we conclude that the issue presented on appeal is moot, and was moot at the time the circuit court issued its declaratory judgment, we remand this matter to the circuit court with directions to vacate its judgment and dismiss this action.

## I. Factual Background

The facts are not disputed by the parties. In the spring of 2006, five registered voters in Lee's Summit formed a Committee that sought to amend the City's Code of Ordinances to prohibit smoking in all workplaces and public places in Lee's Summit. The Committee drafted an initiative ordinance, which was submitted to the City on May 24, 2006, after the Committee obtained the number of voter signatures required by the City's Charter. Under § 10.6(a) of the City Charter, when an initiative petition is found sufficient, the City Council generally has two options: either (1) "adopt [the] proposed initiative ordinance without any change in substance"; or (2) "fix a date for holding the election to submit the proposed … ordinance to the voters of the city."

On August 10, 2006, the City Council adopted two ordinances addressing the smoking issue. The first, Ordinance No. 6250, banned smoking in workplaces and public places in the City with certain exceptions; one exception exempted restaurants (but only for seven years) and bars from the ban. The second, Ordinance No. 6251, was similar to Ordinance No. 6250, but repealed Ordinance No. 6250's exception for bars and restaurants. Section 3 of Ordinance No. 6251 provided "[t]hat this ordinance shall be referred to the people for approval and shall be in full force and effect from and after the date of its approval by a majority of the votes cast thereon," and directed the City Clerk to notify the Election Board of the passage of the ordinance in time for the issue to be placed on the November 7, 2006 ballot.

Also on August 10, 2006, and apparently as part of a negotiated resolution of the issue, the Committee withdrew its initiative ordinance, which pursuant to Charter § 10.6(d) caused the proposed ordinance to "have no further force or effect."

On August 28, 2006, the City Clerk notified the Board, pursuant to § 115.125,[1] that the City Council had called a special municipal election to be held on November 7, 2006, and requested that the Board place the following question on the ballot pursuant to Ordinance No. 6251:

Shall Article X of Chapter 17 of the Code of Ordinances of the City of Lee's Summit, Missouri be amended to prohibit smoking in all restaurants and bars in the City of Lee's Summit, MO, effective 120 days from and after the date of approval by a majority of the voters of the city?

On September 11, 2006, the Board filed the instant lawsuit in Jackson County Circuit Court against Lee's Summit, requesting a declaratory judgment as to whether

---

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

the Board was required to place this issue on the November 7 election ballot.

The Board and Lee's Summit shared the view that the circuit court was not in a position to rule on the merits of the declaratory judgment action prior to the date on which the Board was required by law to make absentee ballots available for the November 2006 election. Accordingly, shortly after this lawsuit was filed they entered into an agreement, pursuant to which the Board agreed to place the issue on the ballot, as long as Lee's Summit "agreed not to argue mootness."

On November 7, 2006, over 70% of the voters of the City of Lee's Summit voted in favor of Ordinance No. 6251, and shortly thereafter the ordinance took full force and effect.

The City's Charter specifies two general methods by which an ordinance may be passed: (1) through voter approval of an ordinance proposed through the initiative process; or (2) through legislative action of the City Council and Mayor. Speaking generally, the Board's position is that the two methods specified in Lee's Summit's Charter are the exclusive means by which Lee's Summit Ordinances may be enacted, while the City contends that under Missouri Constitution art. VI, § 19(a), it may employ the hybrid approach it followed here, because that method is not *prohibited* by the Charter.

The circuit court tried the issues presented by the declaratory judgment action based on stipulated facts submitted by the parties. On October 15, 2007, the court issued its judgment, which found that the City "had the authority to call the November 7, 2006 election pertaining to Ordinance No. 6251 ... and the election so held was authorized by law." This appeal followed.

## II. Analysis

The Board argues that the circuit court's judgment erroneously permits Lee's Summit to enact ordinances through a method (City Council passage followed by voter approval) not authorized—and indeed prohibited—by the City Charter. Because we conclude that this lawsuit is moot, we do not address the merits of this issue.

■ The trial court may grant declaratory relief only if presented with:

(1) a justiciable controversy that presents a real, substantial, *presently-existing controversy* admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, "consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief"; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

*Lane v. Lensmeyer,* 158 S.W.3d 218, 222 (Mo. banc 2005)(emphasis added; citation omitted).

■ We have an independent obligation to determine whether a case presents "a real, substantial, presently-existing controversy," or is instead moot.

A threshold question in any appellate review of a controversy is the mootness of the controversy. In Missouri, it is well-settled that the courts do not determine moot cases. A moot case raises the issue of justiciability, and therefore courts may dismiss it *sua sponte.*

*Kinsky v. Steiger,* 109 S.W.3d 194, 195 (Mo.App. E.D.2003) (citations and quotations omitted). "[A]ppellate courts do not sit as moot courts determining speculative issues for the benefit of some other case at some other time." *Henning v. Bd. of Election Comm'rs of St. Louis County,* 787

S.W.2d 742, 744 (Mo.App. E.D.1989); *In re Duvall,* 178 S.W.3d 617, 622 (Mo.App. W.D.2005) ("we 'do not decide questions of law disconnected from the granting of actual relief' ")(quoting *State ex rel. Chastain v. City of Kansas City,* 968 S.W.2d 232, 237 (Mo.App. W.D.1998)).

■■ As we recently explained in *State ex rel. Ag Processing, Inc. v. Public Service Commission,* 276 S.W.3d 303 (Mo. App. W.D. 2008):

> A case is moot if the decision would have "no practical effect upon an existent controversy." When an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is moot and generally should be dismissed.

*Id.* at 306 (citations omitted); *see also Asher v. Carnahan,* 268 S.W.3d 427, 429–30 (Mo.App. W.D.2008)(quoting *River Fleets, Inc. v. Creech,* 36 S.W.3d 809, 813 (Mo.App. W.D.2001)). "The doctrine is triggered when some event 'so alters the position of the parties that any judgment rendered [merely becomes] a hypothetical opinion.' " *Thruston v. Jefferson City Sch. Dist.,* 95 S.W.3d 131, 134 (Mo.App. W.D. 2003) (quoting *State ex rel. Reed v. Reardon,* 41 S.W.3d 470, 473 (Mo. banc 2001)).

■ The Board's declaratory judgment petition seeks a determination as to the legality of the measure Lee's Summit sought to place on the ballot for the November 7, 2006 election. That issue was moot by the time the circuit court issued its judgment in October 2007, however, because the election had already occurred and the ordinance had been passed, based on the Election Board's agreement to place the issue on the ballot. *See, e.g., Armstrong v. Elmore,* 990 S.W.2d 62, 64 (Mo.App. W.D.1999)(holding that because "the April 7, 1998 municipal election was held[,] [a] decision by this court on the issue of whether the County Clerk was mandated to place [a particular] question [proposed by citizen petition] on the April 7, 1998 ballot would, therefore, have no practical effect upon an existent controversy or grant relief to [plaintiff] and would merely be an advisory opinion").

The parties' factual stipulation recites that the Election Board placed the issue on the ballot in exchange for Lee's Summit's agreement "not to argue mootness." "Parties cannot," however, "confer subject matter jurisdiction upon a court by their actions or agreements, where such jurisdiction does not otherwise exist." *Schneidler v. Feeder's Grain Supply, Inc.,* 24 S.W.3d 739, 741 (Mo.App. E.D.2000). This court has the obligation to raise a mootness issue *sua sponte,* despite the parties' agreement not to contest it. *Kinsky,* 109 S.W.3d at 195; *State ex rel. County of Jackson v. Mo. Pub. Serv. Comm' n,* 985 S.W.2d 400, 403 (Mo.App. W.D.1999)(rejecting County's request that we decide the merits in a natural gas rate matter "[d]espite the mootness of this case").

By placing the smoking-ban question on the November 2006 ballot for voter approval, the Election Board itself complied with the Lee's Summit request it now seeks to declare unlawful. This further supports the conclusion that the issue is moot. *See Union Hill Homes Ass'n, Inc. v. RET Dev. Corp.,* 83 S.W.3d 87, 92 (Mo. App. W.D.2002)(holding that judgment of civil contempt against homes association was rendered moot and unappealable when association purged itself of contempt by complying with underlying order); *Brock v. Brock,* 142 S.W.3d 204, 205 (Mo.App. E.D.2004) ("because Father subsequently entered into a settlement agreement with [Mother] wherein both parties agreed that [child] was unemancipated, the controversy in this case [over child's emancipation and Father's consequent support obligation] is moot").

We recognize that "an exception to the mootness doctrine ... exists '[w]here the issue raised is one of general public interest and importance, recurring in nature and will otherwise evade appellate review unless the court exercises its discretionary jurisdiction.'" *State ex rel. Ag Processing, Inc.*, 276 S.W.3d at 306 (quoting *Mo. Cable Television Ass'n v. Mo. Pub. Serv. Comm'n*, 917 S.W.2d 650, 652 (Mo.App.1996)). This exception to the mootness doctrine is "'very narrow,'" and its invocation lies in the discretion of the court. *Kinsky*, 109 S.W.3d at 196 (quoting *In re Southwestern Bell Tel. Co.*, 18 S.W.3d 575, 577 (Mo.App. W.D.2000)).[2]

In order to invoke the "capable of repetition" exception, a plaintiff must show that "'a case presents an issue that (1) is of general public interest; (2) will recur; and (3) will evade appellate review in future live controversies.'" *Asher*, 268 S.W.3d at 431 (quoting *In re Dunn*, 181 S.W.3d 601, 604 (Mo.App. E.D.2006)). We acknowledge that the issue the Election Board seeks to raise is of public importance. We nevertheless do not believe this is an appropriate case in which to exercise our discretion under the "capable of repetition" exception, due to the Election Board's failure to satisfy the exception's other two conditions.

First, the Election Board's claims of future recurrence are vague and speculative. The parties' Stipulation of Facts states only that "[i]t is the City's intent to exercise its powers as a home rule charter city to the fullest extent of the law including the exercise of the authority, *when appropriate*, to make future ordinances effective upon approval of a majority of the voters of the City, in *the same or similar*

*manner* as it has done with regard to Ordinance No. 6251." (Emphasis added.) The Election Board adds in its Brief (without supporting record citation), that "[w]ithin [the Election Board's] jurisdiction are three constitutional charter cities all of whom have *at one time or another expressed an interest* in delegating their city councils' authority to enact ordinances to the voters." (Emphasis added.) Based on these possibilities, the Election Board states that it "filed its petition and this appeal to obtain clarity on whether public elections on such issues are permitted under the law."

While a plaintiff seeking to invoke the "capable of repetition" test need not identify a specific, looming future controversy which will raise the same issues as the present case, it must point to circumstances which take the possibility of recurrence out of the realm of pure speculation. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subject to the alleged illegality"). We conclude that the Election Board's arguments fail to meet this threshold.

Lee's Summit has not articulated any specific intent to use the same means to place another ordinance on the ballot in the future, and it apparently has never done so before. We do not believe that concerns over *Lee's Summit's* future actions constitute a sufficient basis to conclude that this issue is "capable of repetition."

---

2. A second exception to the mootness doctrine (also narrow and discretionary) exists where "a case becomes moot after argument and submission." *Kinsky*, 109 S.W.3d at 196; *Cross v. Cross*, 815 S.W.2d 65, 66 (Mo.App. E.D.1991). Because the election at issue here occurred before the circuit court rendered its decision, this exception does not apply.

While the Board states that other charter cities within Jackson County have "expressed an interest in delegating their city councils' authority to enact ordinances to the voters," we do not believe this claim is sufficient either. To begin with, the Board concedes that this is the only occasion on which *any* charter city within its jurisdiction has attempted to place an ordinance on the ballot for voter approval (and if published judicial decisions are any indicator, no other charter city anywhere in Missouri has previously used this approach). At oral argument the Board's counsel indicated that Blue Springs has employed a *different* device in the past (proposal of Charter amendments) where it desired voter approval before specific measures became effective. In these circumstances, it would be pure speculation for us to conclude that other cities will follow Lee's Summit's lead. Even if they did, the charters of those other cities may well be materially different than Lee's Summit's. Accordingly, relying on those other cities' "expressions of interest" in using similar techniques to pass future ordinances is insufficient *both* because it is speculative, *and* because any such effort may present a fundamentally different legal issue. *See Asher*, 268 S.W.3d at 431 (challenge to language of ballot summary not "capable of repetition" following election where, "[i]f charged with the task of preparing the summary statement for a ballot initiative [in the future], ten different writers would produce ten different versions," and therefore identical legal issue unlikely to recur).

Beyond the facts (1) that a court is presently in no position to grant the Election Board effective relief with respect to Ordinance No. 6251, since the election in which the Election Board placed the item on the ballot is now past, and (2) that the Election Board has shown no present, realistic likelihood that the issue will recur, we also face a further hurdle: *other parties* apparently could challenge the manner in which Ordinance No. 6251 was enacted, based on their present, concrete interests in the Ordinance's validity.

The narrow "capable of repetition" exception "does not apply if the issue 'is likely to be present in a future live controversy practically capable of review.'" *State ex rel. Ag Processing, Inc.*, 276 S.W.3d at 306 (quoting *State ex rel. County of Jackson v. Mo. Pub. Serv. Comm'n*, 985 S.W.2d 400, 403 (Mo.App. W.D.1999)); *Thruston*, 95 S.W.3d at 135 (same). As far as we are aware, Ordinance No. 6251 remains in effect today, and under its provisions, restaurants and bars in the City of Lee's Summit are currently prohibited from allowing persons to smoke indoors. Presumably, those establishments, and potentially their patrons or employees who desire to smoke within them, could challenge the restrictions on smoking contained in Ordinance No. 6251, and as part of such a challenge could argue that the manner in which the Ordinance was enacted was unlawful.

Indeed, the Election Board itself cites us to such a case. In *Levinson v. City of Kansas City*, 43 S.W.3d 312 (Mo.App. W.D.2001), Kansas City authorized the submission to voters of a sales tax on hotel rooms pursuant to a state statute authorizing the passage of such a tax with voter approval. The state statute did not become effective, however, until *after* Kansas City's voters had approved the tax. This Court ultimately held that the sales tax was invalid, based on the fact that the statute authorizing the tax was not effective at the time of the election authorizing it. We rendered this decision in an action brought three days *after* the election, by an individual who requested a declaratory judgment as to the tax's invalidity based

on his allegations that he was "a transient guest of hotels in Kansas City who was obligated to pay taxes on sleeping rooms and who was adversely affected by the illegal tax increase." *Id.* at 315. For other cases deciding similar challenges by affected individuals based on the procedural formalities surrounding a law's enactment, *see, e.g., Trout v. State*, 231 S.W.3d 140, 144–46 (Mo. banc 2007) (Missouri state senator's challenge to campaign finance reform bill based on legislature's alleged violation of the Missouri Constitution's procedural requirements for enacted legislation); *Jackson County Sports Complex Auth. v. State*, 226 S.W.3d 156, 160–62 (Mo. banc 2007)(same).

The fact that other parties could raise the issues the Election Board seeks to litigate—in a live controversy—provides a further reason for refusing to invoke the discretionary "capable of repetition" exception here. In *Thruston v. Jefferson City School District*, 95 S.W.3d 131 (Mo.App. W.D.2003), *untenured* school teachers sought declaratory relief concerning the manner in which they were treated by their employing school district when they sought to raise employment grievances. The teachers' contracts with the school district were not renewed, however, and we accordingly found their claims moot. We also held that those claims did not "evade review," because *tenured* teachers could raise the identical issues in a live controversy. *Id.* at 135.

The claims raised by appellants are not unique to untenured teachers, however. Indeed, it is readily foreseeable how a tenured teacher seeking to raise a grievance could pursue a similar claim. Due to the procedural due process protections provided to tenured teachers regarding their employment, a tenured teacher cannot be terminated without a hearing, which may then be appealed. *See* § 168.106, RSMo 2000. If the tenured teacher had raised claims similar to those posed here, the claims would survive to receive appellate review.

As the claims raised by appellants are not such that they qualify for the exception for claims that are capable of repetition yet evade review, we conclude that the expiration of Thruston's and Ward's contracts mooted their claims against the District.

*Id.*; *see also Nease v. Indep. Living Res. Ctr., Inc.*, 159 S.W.3d 412, 414 (Mo.App. W.D.2005) (dismissing appeal as moot where unemployment benefits claimant had received maximum statutory benefits, despite the adverse agency decision he challenged on appeal; "capable of repetition" exception inapplicable where "[i]ssues regarding the hearing before the Division are . . . not likely to evade appellate review in future live controversies where individuals are disqualified from unemployment benefits").[3]

### III. Conclusion

For the foregoing reasons the present controversy is moot, and we deem it inappropriate to invoke the narrow "capable of repetition" exception to the mootness doctrine. We accordingly do not address the merits. Because the dispute was moot for

---

**3.** We also note that it is at least arguable that appellate review is available in these circumstances, even though there is only a thirty-day "window" between the time a municipality is required to certify a measure to be placed on the ballot, and the date on which absentee ballots must be mailed. *See State ex rel. Chastain v. City of Kansas City*, 968 S.W.2d 232, 239 & n. 6 (Mo.App. W.D.1998) (despite circuit court's issuance of original writ of mandamus only one month before election day, given availability of expedited appellate review "[w]e do not believe that subsequent cases presenting some or all of the same issues will necessarily evade this court's scrutiny").

the same reasons when the circuit court issued its October 2007 judgment, we remand with the direction that it vacate its judgment and dismiss this action.

All concur.