**David KNIGHT and Ray Salva, Appellants,**

v.

**Robin CARNAHAN, in her official capacity as Secretary of State of Missouri; Susan Montee, in her official capacity as Missouri State Auditor; and Everett Bake, Respondents.**

No. WD 70257.

Missouri Court of Appeals, Western District.

Feb. 10, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 2009.

Application for Transfer Denied May 26, 2009.

---

Charles R. Buckley, Deborah J. Blakely, Independence, Donald L. Dickerson, Cape Girardeau, MO, for Appellants.

Charles W. Hatfield, Khristine A. Heisinger, Jefferson City, MO, for Respondent, Bake.

Daniel Y. Hall, Jefferson City, MO, for Respondents, Carnahan and Montee.

Before: THOMAS H. NEWTON, C.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

THOMAS H. NEWTON, Chief Judge.

David Knight and Ray Salva (hereinafter Appellants), acting as Missouri residents, voters, and taxpayers, appeal the trial court's dismissal of their challenge to the Secretary of State's certification of a statewide ballot measure. During the pendency of this appeal, Missouri voters passed the ballot measure, thereby enacting it as Missouri law. Although the measure's passage raises questions of our jurisdiction, a thorough analysis shows the propriety of this court's review. We affirm.

### Factual and Procedural Background

In January of 2008, an initiative petition[1] was submitted by its proponents to

---

1. For clarity, we make some general observations about the procedure for initiative petitions under chapter 116. In *Cures Without Cloning v. Pund,* this court explained:

The Secretary is responsible for certifying the official ballot title of an initiative. The ballot title has two parts: a summary statement and a fiscal note summary. Once an initiative proposal is submitted to the Sec-

the Missouri Secretary of State. The initiative petition proposed amendments to sections 160.534, 163.011, 313.805, 313.817, and 313.822 of the Missouri Revised Statutes. Pursuant to statutory procedure, the Secretary of State sent the sample sheet and a summary statement she prepared to the Missouri Attorney General for review. The Missouri State Auditor prepared a fiscal note and summary and submitted them to the Attorney General for review. The Attorney General approved all three items. Subsequently, on February 27, 2008, the Secretary of State certified the official ballot title,[2] which includes the summary and fiscal note summary. The initiative petition was circulated with the official ballot title, which read as follows:

Shall Missouri law be amended to:

- repeal the current individual maximum loss limit for gambling;

- prohibit any future loss limits;

- require identification to enter the gambling area only if necessary to establish that an individual is at least 21 years old;

- restrict the number of casinos to those already built or being built;

- increase the casino gambling tax from 20% to 21%;

- create a new specific education fund from gambling tax proceeds generated as a result of this measure called the "Schools First Elementary and Secondary Education Improvement Fund"; and

- require annual audits of this new fund?

State governmental entities will receive an estimated $105.1 to $130.0 million annually for elementary and secondary education, and $5.0 to $7.0 million annually for higher education, early childhood development, veterans, and other programs. Local governmental entities receiving gambling boat tax and fee revenues will receive an estimated $18.1 to $19.0 million annually.

The initiative's proponents gathered and submitted signatures to the Secretary of State. On August 5, 2008, pursuant to section 116.150, the Secretary of State issued a certificate of the sufficiency of the petition to be placed on the November 4, 2008 ballot.

On August 14, 2008, Appellants filed suit against the Secretary of State and State Auditor (hereinafter Respondents).[3] Ap-

---

retary and the Attorney General and approved as to form, the Secretary must prepare a summary statement of the initiative, not to exceed 100 words. The summary 'shall be in the form of a question using language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure.' The summary statement is then affixed to each page of the initiative petition before being circulated for signatures.
259 S.W.3d 76, 80 (Mo.App. W.D.2008) (internal citations and footnotes omitted). Once the petition has been circulated, chapter 116 then provides that the secretary of state must certify whether the petition is "sufficient" to be placed on the ballot. § 116.150.

**2.** The "Official ballot title" includes:

[T]he summary statement and fiscal note summary prepared for all statewide ballot measures in accordance with the provisions of this chapter which shall be placed on the ballot and, when applicable, shall be the petition title for initiative or referendum petitions[.]
§ 116.010(4).

**3.** Appellants' suit was subsequently consolidated with a similar suit brought by Edwin McKaskel and Dr. Harold H. Hendrick. However, only Appellants' names appear on the appeal. Shortly after the suit was filed, taxpayer and voter Everett Baker was granted intervention. We refer to Mr. Baker collectively in our denomination of "Respondents."

pellants alleged that under section 116.120, the Secretary of State was required to determine whether the initiative petition complied with the Missouri Constitution and the relevant provisions of chapter 116. The initiative petition, they argued, failed to comply with either. Appellants sought: (1) an injunction prohibiting the measure from being placed on the ballot for the November 4, 2008 election; (2) an order requiring reversal of the Secretary's certification of the sufficiency of the petition; and (3) a declaratory judgment that the proposed measure was "legally insufficient and ineffective." After a hearing on October 15, the trial court dismissed some counts of the petition and ruled against Appellants on the merits of others. Appellants sought relief in this court and subsequently filed a motion for transfer to the Missouri Supreme Court. On October 27, 2008, we denied Appellants' motion for transfer. We take judicial notice of the Secretary of State's certification of the November 4, 2008 general election results showing that Missouri voters passed the ballot measure as Proposition A.

### Standard of Review

Because this case was submitted on stipulated facts, our standard of review is set forth in *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979). *Overfelt v. McCaskill*, 81 S.W.3d 732, 735 (Mo.App. W.D.2002). The only question before us is whether the trial court made the proper legal conclusions from the stipulated facts. *Id.*

■■■ We attempt to harmonize all of an initiative petition's provisions with the constitution. *Comm. for a Healthy Future, Inc. v. Carnahan*, 201 S.W.3d 503, 510 (Mo. banc 2006). When assessing whether a petition violates implementing statutes, we look only for substantial compliance. *Id.* at 512. Additionally, where

the people have demonstrated their will through their vote, our duty is to seek to uphold that decision. *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 12 (Mo. banc 1981).

### Legal Analysis

Appellants assert four claims of error in the trial court's dismissal of their suit; two framed by the Missouri Constitution and two founded in the Missouri Revised Statutes. We first address their claims of Proposition A's lack of compliance with Missouri law, and second address their claim of error in the trial court's dismissal of their remaining constitutional claims as premature before the election.

■■■ Before addressing the merits, we must determine *sua sponte* whether we have jurisdiction. *Moses v. Carnahan*, 186 S.W.3d 889, 896 (Mo.App. W.D.2006). Relying on *Cole v. Carnahan*, Respondents urge us to find many of Appellants' claims moot by virtue of the election. *See* No. 272 S.W.3d 392, 394-95 (Mo.App. W.D. 2008). A claim is moot when the judgment sought would have no practical effect in a controversy. *Asher v. Carnahan*, 268 S.W.3d 427, 429-30 (Mo.App. W.D.2008).

In *Cole*, this court dismissed as moot a challenge to a trial court's refusal to certify new ballot summaries because the statutory deadline for a court to order changes to the ballot had passed. 272 S.W.3d at 394-95. On appeal, Mr. Cole also requested a declaration that the measure was void if the voters ultimately passed it. *Id.* at 393-94. This court rejected Mr. Cole's request because his petition to the trial court had sought relief under section 116.190, which did not authorize remedies other than the certification of a corrected ballot title, and because we may not grant relief on appeal not sought in the trial court. *Id.* at 393-95. Accordingly, *Cole* left open the question of what remedies might be available post-election based on an invalid bal-

lot summary, choosing not to "address whether Mr. Cole may have any other remedies available post election." *Id.* at 395 n. 1. Judge Holliger also wrote separately to state his belief that "it is an open question as to whether a successful proposition at an election can be challenged post-election because of an improper ballot summary." *Id.* at 396.

█ Consequently, *Cole's* finding of mootness was specific to the pre-election remedy sought by Mr. Cole. In the present case, Appellants sought both injunctive and declaratory relief from the circuit court under a variety of claims. We agree that the injunctive relief sought by Appellants is no longer available because the election has passed, and the request is, therefore, moot. However, Appellants also sought declaratory relief as to the invalidity of the petition submitted to the voters on claims that, under our case law, may be subject to a limited post-election review where the proposal has been passed by the voters.[4]

Some precedent holds that procedural defects—at least technical ones—in a measure's enactment may be cured by its subsequent passage. *See Brown v. Morris*, 365 Mo. 946, 290 S.W.2d 160, 165 (1956). Our supreme court has since held that constitutional single-subject requirements "apply to initiative propositions both before and after approval by the voters." *United Gamefowl Breeders Ass'n of Mo. v. Nixon*, 19 S.W.3d 137, 139 (Mo. banc

2000). In *Gamefowl*, the Missouri Supreme Court reviewed a post-election claim seeking to invalidate a statutory measure adopted by Missouri voters based on claims that the initiative petition had violated article III, section 50's single-subject requirement. *Id.*

The Missouri Supreme Court has also reviewed post-election claims of violations of the implementing statutes, despite an initiative's passage by the voters. *See Buchanan*, 615 S.W.2d at 12. In *Buchanan*, the court reviewed post-election allegations of constitutional and statutory defects in the initiative process enacting a constitutional amendment where those challenges were filed prior to the election. *Id.* at 9. The court's concern was whether procedural safeguards had been followed in getting the measure to the voters. *Id.* at 11–12. The safeguards, it explained, were designed to promote voters' informed understanding of the measure's effects or to prevent a "self-serving faction from imposing its will upon the people without their full realization of the effects." *Id.* at 11. In its opinion, the court considered whether the petition would have been justifiably enjoined, whether there was a basis for invalidating the election, and whether the provision was validly adopted. *Id.* at 9.

Consequently, the question of whether the constitutional and statutory requirements for a validly enacted law were fol-

---

4. We are cognizant of this court's recent opinion in *Jackson County Board of Election Commissioners ex rel. Brown, Baker, Dumsky, Whitehead v. City of Lee's Summit*, 277 S.W.3d 740 (Mo.App. W.D. Dec.23, 2008). In that case, it was argued that an ordinance was enacted by means that violated the City's Charter. *Id.* at 743. Our opinion found the suit moot based on its unique facts and distinguishable legal issues. *Id.* at 744. In particular, in *Jackson County*, the election-authority plaintiff's only interest in the validity of the manner in which an ordinance was enacted arose from the election-authority's obligation to place lawfully-proposed matters on the ballot. Once an election was held, the election authority's interest became moot, and it could be awarded no effective relief. Notably, *Jackson County* recognized the possibility that a properly interested plaintiff could bring a post-election challenge asserting the city's failure to comply with procedural requirements in enacting the ordinance. *Id.* at 747.

lowed in this case may be considered post-election. Appellants' claims that the measure violated the constitutional and statutory requirements for initiative petitions are not rendered moot, nor are substantial defects cured, by the election. Rather, because "the people have demonstrated their will," a court's duty becomes "to seek to uphold [the measure] if possible," while examining whether procedural safeguards were followed. *Id.* at 11–12.

■■■ However, because the measure was passed, the question arises whether we are the proper court to review Appellants' claims post-election. When Missouri voters approved the petition, the posture of this case changed dramatically. The enacted measure became effective when approved by the voters.[5] MO. CONST. art. III, § 52(b). Accordingly, Proposition A is now part of our state statutes. The Missouri Constitution reserves to the Missouri Supreme Court exclusive appellate review of claims contesting the validity of state statutes. *See State v. Stottlemyre*, 35 S.W.3d 854, 861 (Mo.App. W.D.2001).[6]

In *Hammerschmidt v. Boone County*, for example, our Supreme Court held it had "exclusive appellate jurisdiction" under article V, section 3 to review the circuit court's denial of a single-subject challenge to a statute after it was enacted by the legislature. 877 S.W.2d 98, 99 (Mo. banc 1994). Similarly, in *Gamefowl*, where the appellants sought to invalidate a measure adopted by the voters and the circuit court refused declaratory and injunctive relief, appellate review of the single sub-

ject and clear title challenges was properly in the Missouri Supreme Court. 19 S.W.3d at 138. Likewise, in *Buchanan*, post-election appellate review of constitutional challenges that were filed pre-election was properly before the Missouri Supreme Court. 615 S.W.2d at 8; *see also Comm. for a Healthy Future*, 201 S.W.3d at 507.

■■■ "If it appears that we do not have jurisdiction, but that the Supreme Court of Missouri does, our only authority in this matter is to transfer it to the Supreme Court." *Moses*, 186 S.W.3d at 896.[7] Mere allegations of unconstitutionality, however, are insufficient to vest exclusive jurisdiction in the supreme court: "The constitutional issue must be real and substantial, not merely colorable." *McCormack v. Capital Elec. Constr. Co.*, 159 S.W.3d 387, 404 (Mo.App. W.D.2004). To determine whether a constitutional issue is real and substantial, we look to see whether the claim involves a contested matter of right that leaves fair doubt and reasonable room for disagreement. *Id.* Because we conclude that Appellants' claims as to Proposition A's validity do not meet this standard, we retain jurisdiction over this appeal.

*Compliance with the Single–Subject Rule*

■■■ Appellants contend that the trial court erred in finding that the initiative petition did not violate the single-subject rule in article III, section 50 of the Missouri Constitution. Article III, section 50 provides in part that "Petitions for laws

---

5. "Any measure referred to the people shall take effect when approved by a majority of the votes cast thereon, and not otherwise." MO. CONST. art. III, § 52(b).

6. Article V, section 3 provides, "The supreme court shall have exclusive appellate jurisdiction in all cases involving the validity ... of a

statute or provision of the constitution of this state [.]"

7. Article V, section 11 of the Missouri Constitution provides "want of jurisdiction shall not be ground for dismissal, and the proceeding shall be transferred to the appellate court having jurisdiction."

shall contain not more than one subject which shall be expressed clearly in the title."[8] This single-subject requirement applies to petitions both before and after Missouri voters have approved a measure. *Gamefowl,* 19 S.W.3d at 139. We read this provision liberally to avoid judicial intervention in the initiative process. *See Missourians to Protect the Initiative Process v. Blunt,* 799 S.W.2d 824, 827 (Mo. banc 1990). We also attempt to "construe [a] petition in such a way that the provisions connected with or incident to the central purpose of the proposal are harmonized and not treated as separate subjects." *Comm. for a Healthy Future,* 201 S.W.3d at 511.

Appellants argue that Proposition A's central purpose was educational funding and that changes in gambling license limitations, patron identification requirements, and individual loss limits were not germane to the measure's purpose of funding education. We do not agree that the measure's purpose was educational funding. Proposition A effected multiple changes in the regulation of Missouri gaming, provided for a fund for gambling revenues, and directed how those gambling funds are to be managed and used. Consequently, the trial court did not err in finding that the measure's central purpose was the regulation of gambling and gambling revenues.

 A measure may effect multiple changes yet have a single subject if all its provisions are connected with a central controlling purpose. *Gamefowl,* 19 S.W.3d at 140. Provisions that are incidental to effecting the measure's central purpose are not treated as separate subjects. *Id.* While amending separate statutory chapters could make a proposal suspect, it does not by itself create a single-subject viola-

tion: the key concern is whether those amendments are connected to the measure's central purpose. *See Missourians to Protect the Initiative Process,* 799 S.W.2d at 831 (stating no *per se* single-subject violation occurred under article III, section 50 where a measure amended separate articles or sections of the constitution). Finally, providing appropriations for the funds derived from a measure does not render the measure constitutionally infirm. *See Payne v. Kirkpatrick,* 685 S.W.2d 891, 905 (Mo.App. W.D.1984). As the trial court found, the central purpose of Proposition A was the regulation of gambling and gambling revenue and its provisions for fund regulation were incidental to this purpose. Because this claim does not offer a "real and substantial" issue of the measure's constitutionality, it is proper for us to reach its merits, and point one is denied.

### Compliance with Section 116.050

 Appellants also claim error in the trial court's dismissal of their claims under section 116.050, which requires initiative petitions to contain all matter that would be deleted or repealed by the measure. It provides in part:

The full and correct text of all initiative and referendum petition measures shall: (1) Contain all matter which is to be *deleted* included in its proper place enclosed in brackets and all new matter shown underlined; (2) Include all sections of existing law or of the constitution which would be *repealed* by the measure[.]

§ 116.050.2 (emphasis added).

Appellants' petition argued several sections of Chapter 313 "affected" by the measure were not listed in the initiative and that the initiative did not "set forth

---

**8.** Appellants do not assert a clear-title challenge on appeal.

the impact, effect and changes" it would have on those provisions. To this court, Appellants argue that section 116.050 required the initiative to list those sections that would be "directly modified or repealed" by its enactment. Appellants contend that the initiative's prohibition on additional licenses directly conflicts with the Gaming Commission's authority under sections 313.812.1, 313.805, and 313.004.

 When interpreting a statute, we give words their plain and ordinary meaning. *Gerrard v. Bd. of Election Comm'rs.*, 913 S.W.2d 88, 89 (Mo.App. E.D.1995). The statute plainly states that initiative petitions must contain deleted matter in brackets, new matter with underlining, and repealed sections in total. Delete means: "[t]o erase; to remove; to strike out." BLACKS LAW DICTIONARY 426 (6th ed.1990). Repeal means:

> [t]he abrogation or annulling of a previously existing law by the enactment of a subsequent statute which declares that the former law shall be revoked and abrogated (which is called 'express' repeal), or which contains *provisions so contrary to or irreconcilable* with those of the earlier law that only one of the two statutes can stand in force (called 'implied' repeal).

*Id.* at 1299 (emphasis added).

Following the plain and ordinary meaning, we find section 116.050 does not require initiative proponents to include all those provisions "affected," "impacted," or "modified" by a proposed measure. Moreover, requiring proponents to "ferret out" all such potential conflicts in the abstract would tend to stifle the initiative process. *See Buchanan,* 615 S.W.2d at 15.

By its plain meaning, section 116.050 does, however, require the inclusion of those sections impliedly repealed because provisions in the measure are "so contrary to or irreconcilable with those of the earli-

er law that only one of the two statutes can stand in force." *See* BLACKS LAW DICTIONARY at 1299. Here, Proposition A's limitation on the number of licenses that may be issued is a limitation on the statutory authority of the Gaming Commission granted by sections 313.812.1, 313.805, and 313.004. It consequently affects or modifies these provisions of chapter 313. Proposition A is not, however, so irreconcilable with these provisions that it necessarily negates them. Consequently, they were not "deleted" or "repealed," and section 116.050 did not require the petition to include these sections. Appellants' third point is denied.

### Dismissal of Claims under Section 116.175

Appellants also contend the trial court erred in dismissing their challenge to the fiscal note as untimely filed under section 116.190.1. In count six of their petition, Appellants alleged that the fiscal note and summary failed to comply with section 116.175.3, which requires a statement of the measure's cost or savings to state and local government and requires fiscal language "neither argumentative nor likely to create prejudice." Appellants argued, *inter alia,* that the fiscal note did not include information on revenue lost by state and local government because of the measure's prohibition on additional licenses.

██ The trial court found that because Appellants were challenging the fiscal note summary, Appellants' claim was required to be brought within ten days of the certification of the ballot title in February, pursuant to section 116.190.1. Subsection 116.190.1 provides in part:

> Any citizen who wishes to challenge *the official ballot title or the fiscal note* . . . for a statutory initiative or referendum measure, may bring an action in the

circuit court of Cole County. *The action must be brought within ten days after the official ballot title is certified* by the secretary of state. . . .

(Emphasis added.) Because Appellants did not file their challenge to the fiscal note summary until August—months after the secretary had certified the ballot title—the trial court held their claim was time-barred.

On appeal, Appellants assert that their claim was authorized as a challenge to the Secretary of State's certification of the sufficiency of the petition under section 116.200, which provides in part:

*After the secretary of state certifies a petition as sufficient* or insufficient, any citizen may apply to the circuit court of Cole County to compel him to reverse his decision. *The action must be brought within ten days after the certification is made.*

(Emphasis added.) Because the Secretary of State certified the sufficiency of the petition in August, Appellants argue their claim was timely filed. They reason a contest of the fiscal note summary is authorized under section 116.200 because when the Secretary of State certifies the sufficiency of the petition, section 116.120 charges the Secretary with determining "whether it complies with the Constitution of Missouri and with [chapter 116]." § 116.120.1.

 Section 116.190 "provides a means for citizens wishing to challenge the language of the official ballot title or fiscal note to bring an action in circuit court." *Overfelt v. McCaskill,* 81 S.W.3d 732, 736 (Mo.App. W.D.2002) (internal citation and quotation marks omitted). Subsection 116.190.3 requires the litigant "shall state the reasons why the fiscal note or the fiscal note summary portion of the official ballot title is insufficient or unfair," and "shall request a different fiscal note or

fiscal note summary." Section 116.190.4 directs that the trial court may remedy deficiencies in the fiscal note or summary by certification to the secretary of state or remand to the state auditor. In creating its remedies, "the legislature apparently weighed the interests of the citizenry in getting ballot initiatives on the ballot in a timely fashion against the interests of those opposing the language to be utilized on the official ballot title." *Overfelt,* 81 S.W.3d at 736 n. 3.

Although section 116.190 would have authorized Appellants' challenge had it been timely filed, provides requirements for the filing, and offers remedies for the claim, Appellants ask us to read section 116.200 in conjunction with section 116.120 to authorize their challenge to the fiscal note. They contend nothing in these sections "prohibits or precludes" such a reading.

 Even if we were to read sections 116.120 and 116.200 so broadly, the result here would not change. In section 116.190, the legislature provided a specific means and a specific remedy for challenges to the fiscal note summary—as well as a specific deadline. It is axiomatic that where two statutes address the same subject matter and there is a necessary repugnance, the specific controls over the general. *Robinson v. Health Midwest Dev. Group,* 58 S.W.3d 519, 522 (Mo. banc 2001). Section 116.190 provides for challenges to the fiscal note summary and requires them to be brought within ten days of the ballot title certification. Reading sections 116.200 and 116.120 to permit a challenge to the fiscal note summary within ten days of the certification of the sufficiency of the petition instead would create a "necessary repugnance" because the legislature provided that these challenges must be brought within ten days of the ballot title's certification. Accordingly, under the principle of *lex specialis derogat*

*legi generali,* section 116.190.1's specific deadline would control. Correspondingly, we must presume that the legislature acts with purpose and does not insert idle verbiage into a statute. *Civil Serv. Comm'n of City of St. Louis v. Members of Bd. of Aldermen of City of St. Louis,* 92 S.W.3d 785, 788 (Mo. banc 2003). Here the legislature provided a deadline in 116.190.1 for pre-election challenges to the fiscal note summary; we do not read its language as superfluous. Consequently, Appellants' challenge to the fiscal note summary was time-barred, and Appellants' fourth point is denied.

### Pre-election Review of Other Constitutional Claims

 Appellants additionally assert error in the trial court's dismissal of their other constitutional claims as premature. Appellants claim that the measure's limitation on gambling licenses violated four constitutional provisions and pre-election review was proper because the petition violated these provisions on its face.

 Should we agree with Appellants and hold these claims were not premature prior to the election, such an outcome would have no practical effect in this case. Accordingly, this argument is moot. *See Asher,* 268 S.W.3d at 430. However, we address the propriety of the trial court's pre-election dismissal of substantive constitutional claims as an issue capable of repetition yet avoiding review. *See State ex rel. Walton v. Blunt,* 723 S.W.2d 405, 406 (Mo.App. W.D.1986); *Gramex Corp. v. Von Romer,* 603 S.W.2d 521, 523 (Mo. banc 1980). "This exception is appli-

cable when a case presents an issue that (1) is of general public interest; (2) will recur; and (3) will evade appellate review in future live controversies." *Asher,* 268 S.W.3d at 431 (internal quotation marks omitted). Because we believe the question of the scope of pre-election review of constitutional conflicts in a proposed measure is of public interest and will continue to be raised yet evade appellate review, we write to state we do not believe the trial court erred in dismissing these claims as premature.[9]

 Courts are reluctant to intervene in the initiative process. "[We] do not sit in judgment on the wisdom or folly of proposals. Neither will courts give advisory opinions as to whether a particular proposal would, if adopted, violate some superseding fundamental law...." *Missourians to Protect the Initiative Process,* 799 S.W.2d at 827. Thus, we do not review the substance of a proposed measure prior to its passage by the voters: "[o]ur single function is to ask whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions, have been regarded." *Id.*

 However, precedent does grant us some discretion to review allegations that an initiative is facially unconstitutional. *Union Elec. Co. v. Kirkpatrick,* 678 S.W.2d 402, 405 (Mo. banc 1984). This exception comes into play where the constitutional violation in a proposed measure is so obvious as to constitute a matter of form. *State ex rel. Hazelwood Yellow Ribbon Comm. v. Klos,* 35 S.W.3d 457, 468–69

---

9. Appellants also ask us to address these claims on the merits. Because the claims were dismissed as premature, they are dismissed without prejudice unless designated otherwise. *See* Rule 67.03 Mo. R. Civ. P. A claim dismissed without prejudice is not a final judgment—thus precluding appellate re-

view—unless the practical effect is to terminate the litigation. *Chromalloy Am. Corp. v. Elyria Foundry Co.,* 955 S.W.2d 1, 3 (Mo. banc 1997). This exception does not apply here, as the trial court's dismissal did not bar Appellants from re-filing these challenges when ripe for review.

(Mo.App. E.D.2000). Because we "attempt to harmonize all provisions of the initiative's proposal with the constitution," *Committee for a Healthy Future*, 201 S.W.3d at 510, Appellants bore a heavy burden to present a viable challenge to the measure's constitutionality, much less to assert a claim so facially apparent that it comprised a matter of form. We do not believe that Appellants' claims met this burden.

Appellants argued that the measure's limitation on gambling licenses violated four constitutional provisions. (1) Article III, section 39(d) states that state revenue derived from gaming "shall be appropriated ... solely for ... elementary, secondary, and higher education ... and shall not be included within the definition of 'total state revenues.'" Appellants claim that the measure provides for elementary and secondary education but does not provide for higher education, and thus violates this provision. Respondents argue section 39(d) creates a limitation on the types of entities that may receive gambling revenues, but does not require all three types of educational entities receive funding from any given measure.

(2) Article III, section 39(e) authorizes the general assembly to permit gambling on the Mississippi and Missouri Rivers. Appellants contend that because the measure restricts the legislature's licensing power, it violates this provision. Respondents assert that there was no conflict between the measure and the general assembly's grant of authority.

(3) Article III, section 40(28) restricts the general assembly's power to pass local or special laws granting any "special or exclusive right, privilege or immunity." Appellants assert that the measure is a special law and grants exclusive rights and privileges to corporations currently licensed to operate excursion gambling boats. Respondents contend that section 40(28) only applies to laws passed by the legislature and, further, that the measure was not a special law because the holders of gambling licenses are subject to change.

(4) And finally, Appellants argue that the limitations on licenses denies equal protection as provided for under Article 1, section 2 to unspecified persons. Respondents assert that because Appellants did not claim a suspect class, the measure was subject to rational basis review and license limitation is rationally related to the state's interest in regulating gambling.

█ Without ruling on the merits, we find each of these assertions debatable. Before a vote is held on a measure, the judiciary may review only "those threshold issues that affect the integrity of the election itself, and that are so clear as to constitute a matter of form." *Gamefowl*, 19 S.W.3d at 139. Each of Appellants' claims failed to assert a constitutional violation so obvious as to be a matter of form. Consequently, "[t]he circuit court properly refused to reach the merits of the 'substantive issues' of the constitutionality of the initiative proposal as not ripe for adjudication." *Ketcham*, 847 S.W.2d at 834; *see also Cures Without Cloning*, 259 S.W.3d at 84.

### Conclusion

For the foregoing reasons, the judgment of the circuit court is affirmed.

SMART and ELLIS, JJ. concur.