

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **ANITA MARIE KUEHNER, ET AL.,** | ) | |
| | ) | **WD77899** |
| Appellants, | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | |
| **JASON KANDER,** | ) | **September 18, 2014** |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri
Honorable Daniel Richard Green, Judge**

**Before Special Division:  Thomas H. Newton, P.J.,
Mark D. Pfeiffer, and Cynthia L. Martin, JJ.**

### Summary

Ms. Anita Marie Kuehner *et al.* (Appellants) appeal the trial court's judgment that Initiative Petition 2014-024 neither infringes upon Article XII, section 2(b), or Article III, section 50, of the Missouri Constitution, nor violates section 116.050.[1]  We affirm.

---

[1] Statutory references are to RSMo 2000 and the Cumulative Supplement 2013, unless otherwise stated.

1

## Factual and Procedural Background

The following facts were adduced from the joint stipulation of facts and exhibits. In March 2013, a representative of TeachGreat.org[2] submitted an initiative petition sample sheet to the Secretary of State's Office "relating to a proposed . . . amendment to [a]rticle IX of the Missouri Constitution." It was identified as Initiative Petition 2014-024 (Petition). The Petition supported the following proposed constitutional amendment, which reads as follows:

> *Be it resolved by the people of the state of Missouri that the Constitution be amended:*
>
> Article IX is amended by adopting six new sections to be known as Article IX, Sections 3(d), 3(e), 3(f), 3(g), 3(h), and 3(i), to read as follows:
>
> Section 3(d). All certificated staff shall be at will employees unless a contract is entered into between a school district and certificated staff (1) prior to the effective date of this section; or (2) pursuant to the provisions of section 3(e), 3(f), and 3(h) of this article. "Certificated staff," as used in this article, shall mean employees of a school district who hold a valid certificate to teach in the State of Missouri.
>
> Section 3(e). No school district receiving any state funding or local tax revenue funding shall enter into new contracts having a term or duration in excess of three years with certificated staff.
>
> Section 3(f). *Effective beginning July 1, 2015*, and notwithstanding any provisions of this constitution, any school district receiving any state funding or local tax revenue shall develop and implement a standards based performance evaluation system approved by the Missouri Department of Elementary and Secondary Education. The majority of such evaluation system shall be based upon quantifiable student performance data as measured

---

[2] TeachGreat.org, a political action committee, funded and led the effort to gather signatures for Initiative Petition 2012-024 (Petition).

2

by objective criteria and such evaluation system shall be used in (1) retaining, promoting, demoting, dismissing, removing, discharging and setting compensation for certificated staff; (2) modifying or terminating any contracts with certificated staff; and (3) placing on leave of absence any certificated staff because of a decrease in pupil enrollment, school district reorganization or the financial condition of the school district.

Section 3(g). Nothing in section 3(f) shall prevent a school district from demoting, removing, discharging, or terminating a contract with certificated staff for one or more of the following causes: (1) physical or mental condition unfitting him to instruct or associate with children; (2) immoral conduct; (3) incompetency, inefficiency or insubordination in line of duty; (4) willful or persistent violation of, or failure to obey, state laws or regulations; (5) excessive or unreasonable absence from performance of duties; or (6) conviction of a felony or a crime involving moral turpitude.

Section 3(h). In any suit to challenge a school district's decision regarding retention, promotion, demotion, dismissal, removal, discharge, modification or termination of contracts, or setting compensation of certificated staff, except for decisions made for any of the causes listed in Section 3(g) of this Article, the person bringing such suit must establish that the school district failed to properly utilize the standards based performance evaluation system as referenced in Section 3(f) of this Article.

Section 3(i). Certificated staff shall retain the right to organize and to bargain collectively as provided in article I, section 29 of this Constitution, except with respect to the design and implementation of the performance based evaluation system established in this article, and as otherwise referenced in this article.

(Italics added to section 3(f).) TeachGreat.org later submitted more than 25,000 signature pages[3] to the Secretary of State's Office in support of the Petition.

---

[3] A blank sample signature page in the record included spaces for fifteen signatures.

In June 2014, the Appellants (teachers employed by the Francis Howell School District) filed suit against Secretary of State Jason Kander in the Circuit Court of Cole County for declaratory judgment and injunctive relief. The Appellants are covered by a collective bargaining agreement, which includes a "teacher performance evaluation regulation," through June 2016. They argued that the Petition supports a constitutional amendment that: (1) "amends more than one article of the constitution and contains multiple subjects"; (2) "does not contain the full text of the measure"; and (3) "fails to comply with section 116.050.2."

In July 2014, Secretary Kander filed an answer, arguing that the Appellants' claim should be dismissed because it: (1) "fail[s] to state a claim upon which relief can be granted"; (2) "presents allegations that are not yet ripe for adjudication[] or are not justiciable"; and (3) includes "claims [that] are untimely and barred." Additionally, TeachGreat.org and its treasurer, Mr. John C. Cozad, jointly filed an answer as intervenors, arguing that the Appellants' claim should be dismissed because: (1) it "fails to state a claim upon which relief may be granted" and further escapes eligibility for the granting of relief because the Appellants did not "raise constitutional issues at the earliest opportunity"; (2) "[s]ection 116.200 only authorizes suits challenging the sufficiency of a petition to be brought following the [S]ecretary of [S]tate's certification of sufficiency and thus this case is not ripe"; and (3) "[c]onstitutional challenges to proposed initiatives are not ripe until after

4

passage of such measure[s] by the voters." TeachGreat.org and Mr. Cozad also jointly filed a motion for judgment on the pleadings.

In August 2014, Secretary Kander certified that, pursuant to the Missouri Constitution and Chapter 116, the Petition contained enough valid signatures to enable the proposed amendment to be included on the November 2014 ballot as "Constitutional Amendment 3" (Initiative). A hearing was held on the Appellants' claim and intervenors' motion.

In September 2014, the court entered judgment against the Appellants. It found that, as a matter of law, the Initiative does not infringe upon article XII, section 2(b), or article III, section 50, of the Missouri Constitution, nor does it violate section 116.050. It dismissed the Appellants' claim and denied all relief requested. The Appellants appeal.

## Standard of Review

"Because this case was submitted on stipulated facts, our standard of review is set forth in *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979)." *Knight v. Carnahan*, 282 S.W.3d 9, 15 (Mo. App. W.D. 2009) (internal citation omitted). Therefore, "[t]he only question before us is whether the trial court made the proper legal conclusions from the stipulated facts." *Id.*

Additionally, we "note that at no place in either the Missouri Constitution or in the implementing statutes is any court granted the power to enjoin an amendment from being placed on the ballot upon the ground that it would be unconstitutional if passed and adopted by the voters." *Buchanan v.*

5

*Kirkpatrick*, 615 S.W.2d 6, 12 (Mo. banc 1981) (internal citation omitted). Moreover, when a court is "called upon to intervene in the initiative process, [it] must act with restraint, trepidation[,] and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course." *Brown v. Carnahan*, 370 S.W.3d 637, 645 (Mo. banc 2012).

## Legal Analysis

### *Jurisdictional Statement*

This appeal involves challenges to a Petition in support of a proposed constitutional amendment that has been certified to be included on the November 2014 ballot. The Appellants have appealed to this court to reverse the certification of the Petition.

Generally, such constitutional challenges are not ripe for adjudication until after the results of an election are known. *See*, *e.g.*, *Brown*, 370 S.W.3d at 645; *Ketcham v. Blunt*, 847 S.W.2d 824, 834 (Mo. App. W.D. 1992). However, although the proposed amendment has not yet been considered by the voters, we find that our review is not premature and that this appeal is ripe for adjudication because it does not "encroach[] on the people's constitutional authority" in the electoral process, but instead requests that we "determine whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative provisions, have been regarded." *Brown*, 370 S.W.3d at 645 (internal quotation marks and citation omitted). Furthermore, "Missouri law authorizes courts to conduct pre-

6

election review of the facial constitutionality of an initiative petition." *City of Kansas City, Mo. v. Chastain*, 420 S.W.3d 550, 554 (Mo. banc 2014).

Lastly, we have determined that the Missouri Supreme Court[4] does not retain exclusive jurisdiction in this matter because it concerns a pre-election challenge that involves a "[m]ere allegation[] of unconstitutionality" and not constitutional issues that are "real and substantial, not merely colorable." *Knight*, 282 S.W.3d at 17. Therefore, our jurisdiction is proper.

*The Appeal*

The Appellants raise three points. In the first point, they argue that the trial court erred as a matter of law in failing to reverse the certification of the Petition because the Initiative "violates [a]rticle III, section 50, and [a]rticle XII, section 2(b), of the Missouri Constitution." The Appellants claim that, "on its face," section 3(i) of the Initiative "amends both [a]rticle I and [a]rticle IX." They contend that the Initiative would not only amend article IX, which concerns education, but also article I, section 29, which concerns collective bargaining. The Appellants further argue that "[a]rticle I, [s]ection 29[,] currently contains a right to collectively bargain without exception," and that

---

[4] Article V, section 3, of the Missouri Constitution states:

> The supreme court shall have exclusive appellate jurisdiction in all cases involving the validity of a treaty or statute of the United States, or of a statute or provision of the constitution of this state, the construction of the revenue laws of this state, the title to any state office and in all cases where the punishment imposed is death. The court of appeals shall have general appellate jurisdiction in all cases except those within the exclusive jurisdiction of the supreme court.

7

"[v]oters are now asked whether to amend [it] by adding an exception to collective bargaining rights."

Article III, section 50, states, in relevant part:

> Initiative petitions proposing amendments to the constitution shall be signed by eight percent of the legal voters in each of two-thirds of the congressional districts in the state, and petitions proposing laws shall be signed by five percent of such voters. Every such petition shall be filed with the secretary of state not less than six months before the election and shall contain an enacting clause and the full text of the measure. Petitions for constitutional amendments shall not contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith[.]

Article XII, section 2(b), states, in relevant part:

> All amendments proposed by the general assembly or by the initiative shall be submitted to the electors for their approval or rejection by official ballot title as may be provided by law, on a separate ballot without party designation, at the next general election, or at a special election called by the governor prior thereto, at which he may submit any of the amendments. No such proposed amendment shall contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith.

Article I, section 29, states "[t]hat employees shall have the right to organize and to bargain collectively through representatives of their own choosing." Section 3(i) of the proposed amendment states:

> Certificated staff shall retain the right to organize and to bargain collectively as provided in article I, section 29 of this Constitution, except with respect to the design and implementation of the performance based evaluation system established in this article, and as otherwise referenced in this article.

Reading section 3(i) in context, as we must, it is apparent that section 3(i) merely acknowledges article I, section 29, by including *text from* article I in the proposed amendment to article IX. The mere reference to article I, section 29, does not directly or by implication amend article I, section 29. Though section 3(i) continues, after referencing the text of article I, section 29, to prohibit collective bargaining that would result in contract provisions inconsistent with article IX, we do not agree with the Appellants' premise that this constitutes a direct or implied amendment of article I, section 29. Article I, section 29, permits collective bargaining. Section 3(i) in no way impairs the fundamental right to collectively bargain. The Appellants acknowledge that the right to collectively bargain protected by article I, section 29, has never permitted employees to bargain for, or employers to agree to provide, rights that are inconsistent with the Missouri Constitution.

We recognize that the evaluation systems anticipated by the amendment to article IX would remain to be designed by school districts and approved by the Missouri Department of Elementary and Secondary Education. We also recognize that the effect of section 3(i) will be to prevent collective bargaining as to the "design and implementation" of these systems. However, we perceive this practical impact to be in the nature of an effect on the fundamental right to collectively bargain set forth in article I, section 29, and not an amendment to that right. *See Buchanan*, 615 S.W.2d at 15. We are not saying that there could never be a constitutional effect on the right to collectively bargain so excessive

9

in its scope as to render that right an illusory one. This is not such a case, however.

The Appellants further argue that section 3(i) will have the effect of retrospectively modifying existing collective bargaining agreements. They cite to *Independence-National Education Ass'n v. Independence School District*, 223 S.W.3d 131, 136 (Mo. banc 2007), and *American Federation of Teachers v. Ledbetter*, 387 S.W.3d 360, 363 (Mo. banc 2012), in support of their argument that public employees have the right to organize and bargain collectively and that a public employer may not "unilaterally impose a new agreement that contradicts the terms of the agreements then in effect." *Independence Nat'l*, 223 S.W.3d at 133. Section 3(i) of the Petition does not facially direct the retroactive nullification of existing collective bargaining contracts. More to the point, such an argument addresses a substantive, and not a procedural or facial, constitutional concern that is not ripe for our consideration. *See Brown*, 370 S.W.3d at 645; *see also Chastain*, 420 S.W.3d at 554. If the petition is approved by the voters, and if an attempt is thereafter made to apply the amendments to article IX to require nullificiation of existing collective bargaining contracts, then a person or an entity with standing to do so will be free to raise the "unconstitutional as applied" challenge to article IX at that time. Point one is denied.

In the second point, the Appellants argue that the trial court erred as a matter of law in failing to reverse the certification of the Petition because the

10

Initiative "violates [a]rticle III, section 50, and [a]rticle XII, section 2(b), of the Missouri Constitution" in that it "contains two subjects."

"An initiative has one subject if all of its provisions are connected with a central purpose." *United Gamefowl Breeders Ass'n of Mo. v. Nixon*, 19 S.W.3d at 137, 140 (Mo. banc 2000) (citing *Buchanan*, 615 S.W.2d at 13-14). Additionally, "[a] measure may encompass one subject, and yet effect several changes and incidents, if all are germane to its one controlling purpose." *Id.* (internal citation omitted).

"[T]he purpose of the prohibition [of] "multiple subjects in a single ballot proposal is to prevent 'logrolling,' a practice . . . whereby unrelated subjects that individually might not muster enough support to pass are combined to generate the necessary support." *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 830 (Mo. banc 1990). This "prohibition is intended to discourage placing voters in the position of having to vote for some matter [that] they do not support in order to enact that which they earnestly support." *Id.* Accordingly, "[t]he single subject matter rule is the constitutional assurance that within the range of a subject and related matters a measure must pass or fail on its own merits." *Id.* (internal citation omitted). This "purpose is restated in article XII, [section] 2(b)." *Id.*

Most pointedly, when "determining whether [a] proposed constitutional amendment violates the 'one subject' rule, there are certain general principles that have been established." *Id.* Proposed amendments "will be liberally and

11

nonrestrictively construed so that provisions connected with or incident to effectuating the central purpose . . . will not be treated as separate subjects." *Id.* (citing, *inter alia*, *Buchanan*, 615 S.W.2d at 6). The *Buchanan* court "probed the outer limits of what matters may be included in a single constitutional proposition without violating the single subject rule." *Id.* at 831. In a proposal that included six subjects related to taxation, the court "found a *readily identifiable and reasonably narrow purpose* that knitted all the diverse provisions together," which was "to limit taxes and spending by state and local government." *Id.* (Emphasis added.)

Here, the Appellants contend that the purposes contained within the Initiative are impermissibly broad. We disagree. When reviewing the language of each section contained within the Initiative, it is clear that its central focus is on the parameters of teacher employment and retention within school districts. Accordingly, because a "readily identifiable and reasonably narrow" focus exists to connect these provisions into a "central purpose," this Initiative does not violate the single subject rule. This conclusion is solidified by our discussion, above, recognizing that section 3(i) does not introduce a new or second subject, but instead merely recognizes an obvious, and superfluously stated, principle that collective bargaining cannot be employed to disregard provisions of the Missouri Constitution. Therefore, point two is denied.

In the third point, the Appellants argue that the trial court erred as a matter of law in failing to reverse the certification of the Petition because the

12

Initiative "violates [a]rticle III, section 50, of the Missouri Constitution and section 116.050" by "fail[ing] to set out the full text of [a]rticle I, section 29, which [it] amends."

Section 116.050 states:

1. Initiative and referendum petitions filed under the provisions of this chapter shall consist of pages of a uniform size. Each page, excluding the text of the measure, shall be no larger than eight and one-half by fourteen inches. Each page of an initiative petition shall be attached to or shall contain a full and correct text of the proposed measure. Each page of a referendum petition shall be attached to or shall contain a full and correct text of the measure on which the referendum is sought.

2. The full and correct text of all initiative and referendum petition measures shall:

(1) Contain all matter which is to be deleted included in its proper place enclosed in brackets and all new matter shown underlined;

(2) Include all sections of existing law or of the constitution which would be repealed by the measure; and

(3) Otherwise conform to the provisions of article III, section 28 and article III, section 50 of the constitution and those of this chapter.

"When interpreting a statute, we give words their plain and ordinary meaning." *Knight*, 282 S.W.3d at 18 (internal citation omitted). Reviewing section 116.050 by its plain and ordinary meaning "does not require initiative proponents to include all [of] those provisions 'affected,' 'impacted,' or 'modified' by a proposed measure." *Id.* "Moreover, requiring proponents to 'ferret out' all such potential conflicts . . . would tend to stifle the initiative process." *Id.* (quoting *Buchanan*, 615 S.W.2d at 15). Additionally, pursuant to

13

the analysis contained in point one, we do not agree with the Appellants' assertion that this Initiative would amend article I, which renders moot the Appellants' argument that the failure to include the full text of article I, section 29, "violates [a]rticle III, section 50." Therefore, point three is denied.

## Conclusion

For the above reasons, we affirm.


/s/ THOMAS H. NEWTON        ___
Thomas H. Newton, Presiding Judge


Pfeiffer and Martin, JJ. concur.