

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| MISSOURI ELECTRIC COOPERATIVES, D/B/A ASSOCIATION OF MISSOURI ELECTRIC COOPERATIVES, ET AL., | ) ) ) ) ) | WD80007 |
| | ) ) | OPINION FILED: September 13, 2016 |
| Appellants, | ) ) | |
| v. | ) ) | |
| MISSOURI SECRETARY OF STATE JASON KANDER AND RETURNING GOVERNMENT TO THE PEOPLE AND TODD S. JONES, | ) ) ) ) ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Patricia S. Joyce, Judge

Before Special Division:  Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge and Anthony Rex Gabbert, Judge

Challengers to an initiative petition, who claim the Secretary of State's certification of the petition for inclusion on the ballot should be reversed pursuant to section 116.200.1 because the initiative violates the First Amendment, the Equal Protection Clause, and the Privileges and Immunities Clause, appeal from a trial court judgment denying their pre-

election claims because they are not ripe for adjudication. Because the constitutional challenges are not ripe for pre-election judicial review, the trial court's judgment is affirmed.

## Factual and Procedural Background[1]

On December 2, 2014, Todd Jones ("Mr. Jones") submitted to Secretary of State Jason Kander ("Secretary of State") an initiative petition sample sheet proposing to amend article VIII of the Missouri Constitution by adding section 23 ("Proposed Measure"). Mr. Jones is the Deputy Treasurer of Returning Government to the People, a campaign committee organized under the laws of the State of Missouri for the purpose of advocating for the passage of the Proposed Measure. On January 13, 2015, the Secretary of State certified the official ballot title for the Proposed Measure. The official ballot title provides:

Shall the Missouri Constitution be amended to:

- establish limits on campaign contributions by individuals or entities to political parties, political committees, or committees to elect candidates for state or judicial office;
- prohibit individuals and entities from intentionally concealing the source of such contributions;
- require corporations or labor organizations to meet certain requirements in order to make such contributions; and
- provide a complaint process and penalties for any violations of this amendment?

It is estimated this proposal will increase state government costs by at least $118,000 annually and have an unknown change in costs for local government entities. Any potential impact to revenues for state and local governments is unknown.

---

[1]The factual and procedural background is drawn largely from a joint stipulation of facts entered into between the parties in the proceedings before the trial court.

On August 9, 2016, the Secretary of State certified the Proposed Measure for inclusion on the ballot for the November 8, 2016 general election.[2] The Proposed Measure is several pages long, contains 8 sections and numerous subsections, including 18 subsections under section 23.3 alone. The full text of the Proposed Measure is attached. (*Appendix 1, attached*).

On August 4, 2016, a petition for declaratory judgment and injunctive relief contesting the Proposed Measure was filed in the Circuit Court of Cole County against the Secretary of State. A first amended petition ("Petition") was filed on August 9, 2016, immediately after the Proposed Measure was certified for inclusion on the ballot. The Petition was filed pursuant to section 116.120.1, which permits any citizen to seek an order compelling the Secretary of State to reverse a decision that an initiative petition is sufficient or insufficient to be certified for inclusion on the ballot. The plaintiffs named in the Petition are Missouri Electric Cooperatives, doing business as Association of Missouri Electric Cooperatives ("AMEC"), David Klindt ("Klindt"), and Legends Bank ("Legends"). AMEC, Klindt, and Legends are collectively referred to as "Plaintiffs."

AMEC is an association of 47 nonprofit cooperative systems organized pursuant to Chapter 394, RSMo. AMEC has formed and maintains a political action committee, AMEC-PAC. AMEC and its members make contributions to AMEC-PAC. AMEC-PAC makes and receives contributions to and from other political action committees. Klindt is

---

[2]Before the Proposed Measure was certified for inclusion on the ballot, a lawsuit was filed asserting constitutional challenges to the Proposed Measure and a challenge to the ballot title pursuant to section 116.190. *Reeves v. Kander*, 462 S.W.3d 853, 855-56 (Mo. App. W.D. 2015). In *Reeves*, we held that the constitutional challenges were not ripe for adjudication because the Secretary of State had not yet certified the Proposed Measure for inclusion on the ballot. *Id*. at 857-59.

a Missouri citizen. Legends is a Missouri state-chartered bank organized pursuant to the provisions of Chapter 362, RSMo. Legends makes contributions to political action committees formed by members of the Missouri Bankers Association.

The Petition alleges three counts. Count I alleges that the Proposed Measure violates the Plaintiffs' rights under the First Amendment to the United States Constitution and article I, section 8 of the Missouri Constitution because:

> 19. Subsection 12 of Section 23.3[3] of the Proposed Measure specifically prohibits political action committees from receiving contributions from any entity other than "individuals; unions; federal political action committees; and corporations, associations and partnerships formed under chapter 347 to 360, RSMo."
>
> . . . .
>
> 25. Subsection 16(c) of Section 23.3[4] of the Proposed Measure prohibits campaign committees, candidate committees, continuing committees, exploratory committees, political party committees, and political parties from receiving contributions from "any foreign corporation that does not have the authority to transact business in this state pursuant to Chapter 347, RSMo."

[Petition ¶¶ 19, 25]

Plaintiffs argue that Section 23.3(12) unreasonably restricts free speech and free association in a manner that is neither reasonably related nor narrowly tailored to address

---

[3]Section 23.3(12) provides: "Political action committees shall only receive contributions from individuals; unions; federal political action committees; and corporations, associations, and partnerships formed under chapters 347 to 360, RSMo, as amended from time to time, and shall be prohibited from receiving contributions from other political action committees, candidate committees, political party committees, campaign committees, exploratory committees, or debt service committees. However, candidate committees, political party committees, campaign committees, exploratory committees, and debt service committees shall be allowed to return contributions to a donor political action committee that is the origin of the contribution."

[4]Section 23.3(16)(c) provides: "No campaign committee, candidate committee, continuing committee, exploratory committee, political party committee, and political party shall knowingly accept contributions from: . . . (c) Any foreign corporation that does not have the authority to transact business in this state pursuant to Chapter 347, RSMo, as amended from time to time."

4

a State interest in that it would operate to: (i) prohibit Missouri state-chartered banks formed under Chapter 362, including Legends, and state political action committees, such as AMEC-PAC, from making contributions to political action committees; (ii) prohibit the Chapter 394 members of AMEC from making contributions to AMEC-PAC; and (iii) prohibit AMEC-PAC from receiving contributions from other state political action committees. Plaintiffs argue that Section 23.3(16)(c) unreasonably restricts free speech and free association in a manner that is not reasonably related nor narrowly tailored to address a State interest in that it would operate to prohibit foreign corporations from making contributions to Missouri candidates for office or committees which might support them.

Count II alleges that the Proposed Measure violates the Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and article I, section 2 of the Missouri Constitution because there is no rational basis for Section 23.3(12) of the Proposed Measure's disparate treatment of corporations, associations and partnerships formed under Chapters 347 to 360, banks formed under Chapter 362, political action committees, and foreign corporations.

Count III alleges that the Proposed Measure violates the Privileges and Immunities Clause of article IV, section 2 of the United States Constitution because Section 23.3(16)(c) of the Proposed Measure would treat foreign business corporations differently than

domestic business corporations or foreign limited liability corporations[5] with no rational basis to do so.

On August 9, 2016, Returning Government to the People and Mr. Jones (collectively "Intervenors") filed a consent motion seeking to intervene as defendants. The motion was granted by the trial court on August 23, 2016.

On August 19, 2016, the Secretary of State filed his answer to the Petition, and asserted the affirmative defense that the Petition presented constitutional challenges to the Proposed Measure that are not ripe for adjudication nor justiciable, requiring the Petition to be dismissed.

On August 23, 2016, the parties submitted a joint stipulation of facts and exhibits to the trial court, and arguments were heard by the trial court. After considering pre-trial briefs submitted by the parties, the joint stipulation of facts and exhibits, the arguments of counsel,[6] and post-trial proposed judgments submitted by the parties, the trial court entered its judgment on August 25, 2016 ("Judgment"). The Judgment found in favor of the Secretary of State and Intervenors and against Plaintiffs on all counts of the Petition. The Judgment concluded that the Petition alleged substantive constitutional challenges to the Proposed Measure that are not ripe for pre-election judicial review because: (i) the Plaintiffs challenge only a small subset of the Proposed Measure's applications; (ii) the challenges raised are not challenges to the facial constitutionality of the Proposed Measure

---

[5]The Petition alleges that foreign limited liability corporations can register under Chapter 347, RSMo, while foreign general business corporations cannot.

[6]The Record on Appeal does not include a transcript of the oral arguments made to the trial court. The only transcript explains the stipulation of facts and exhibits. At the end of this transcript, the parties advised the trial court that they did not need their respective arguments on the merits to be transcribed.

6

so obvious as to constitute a matter of form, but are instead as-applied challenges; and (iii) the Proposed Measure contains a severability clause that would permit any provisions determined to be unconstitutional post-election to be severed. Alternatively, the Judgment made findings and conclusions that denied each of the Plaintiffs' constitutional challenges on the merits.

Plaintiffs filed an immediate appeal on August 25, 2016. Our appellate proceedings were substantially expedited to require submission of a record on appeal by September 1, 2016, the completion of briefing by September 9, 2016, and oral argument on September 12, 2016.

## Standard of Review

"Because this case was submitted on stipulated facts, our standard of review is set forth in *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979)." *Kuehner v. Kander*, 442 S.W.3d 224, 227-28 (Mo. App. W.D. 2014) (quoting *Knight v. Carnahan*, 282 S.W.3d 9, 15 (Mo. App. W.D. 2009)). "Therefore, '[t]he only question before us is whether the trial court made the proper legal conclusion from the stipulated facts.'" *Id.* at 228 (alteration in original) (quoting *Knight*, 282 S.W.3d at 15). "This Court is primarily concerned with the correctness of the result, not the route taken by the trial court to reach it; the trial court's judgment will be affirmed if it is correct on any ground supported by the record, regardless of whether the trial court relied on that ground." *Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003).

7

**Analysis**

Plaintiffs raise two points on appeal. In their first point, Plaintiffs allege that the trial court erred in concluding that their constitutional challenges to the Proposed Measure were not ripe for review because this court held in *Reeves v. Kander*, 462 S.W.3d 853 (Mo. App. W.D. 2015) that the challenges would be ripe for adjudication once the Proposed Measure was certified for inclusion on the ballot. In their second point, Plaintiffs allege that the trial court erred in refusing to reverse the Secretary of State's decision that the Proposed Measure was sufficient because the Proposed Measure violates Article III, section 51 of the Missouri Constitution as well as the First Amendment and the Equal Protection Clause of the United States Constitution in that the Proposed Measure suppresses speech and is not narrowly tailored to the State's interest in prohibiting the appearance of *quid pro quo* corruption.[7] Because we conclude that the trial court correctly entered judgment against Plaintiffs because their constitutional challenges are not ripe for adjudication, we will not address Plaintiffs' second point on appeal.

**I.**

Plaintiffs' first point on appeal alleges that the trial court was bound by our decision in *Reeves*, where we held, according to Plaintiffs, that constitutional challenges to the Proposed Measure would be ripe for adjudication once the Proposed Measure was certified for inclusion on the ballot. Specifically, Plaintiffs allege that "this Court concluded that the precise constitutional challenges that are being made in this case would become ripe

---

[7]Plaintiffs have abandoned the Privileges and Immunities Clause claim asserted in Count III of the Petition, at least insofar as the trial court's denial of that claim was on the merits, as no claim of error in that regard is raised in point two on appeal.

for judicial review 'following a final determination by the election authority as to whether to certify the initiative for the ballot.'" [Pls.' Br. 14-15 (quoting *Reeves*, 462 S.W.3d at 858)]

### A.

Plaintiffs' argument distorts our holding in *Reeves*. The passage relied on by Plaintiffs appears in connection with *Reeves's* general discussion of the law with respect to pre-election review of constitutional challenges to initiative petitions. 462 S.W.3d at 857-58. Specifically, *Reeves* observed in general terms that "Missouri courts have reviewed [challenges that an initiative petition is facially unconstitutional] on a number of occasions—*following* a final determination by the election authority as to whether to certify the initiative for the ballot." *Id*. at 858 (emphasis in original). *Reeves* did not hold that the specific constitutional challenges at issue in the case before it would be ripe for adjudication once the Proposed Measure was certified for inclusion on the ballot. *Reeves* held only that said challenges were not ripe for adjudication because the Proposed Measure had not yet been certified for inclusion on the ballot. The limited nature of our holding in *Reeves* was made clear by the sentence immediately following the passage relied on by Plaintiffs, where we stated that "we are unaware of any decision in which [pre-election] review has occurred where, as here, sufficient signatures have not been collected and the Secretary [of State] has not decided whether to place the [Proposed Measure] on the ballot." *Id*. In short, *Reeves* did not pre-determine an issue that was not before it—whether

9

Plaintiffs' constitutional challenges to the Proposed Measure[8] would be ripe for adjudication once the Secretary of State certified the Proposed Measure for inclusion on the ballot.

**B.**

In the argument portion of the Brief addressing their first point on appeal, Plaintiffs also allege that their challenges to the Proposed Measure are "facial challenges" to the constitutionality of the Proposed Measure, and that the Missouri Supreme Court authorizes pre-election review of the facial constitutionality of an initiative petition. [Pls.' Br. 12-15] However, Plaintiffs' first point relied on does not claim trial court error because Plaintiffs' constitutional challenges involve the facial validity of the Proposed Measure. Rule 84.04(e)[9] provides that "[t]he argument shall be limited to those errors included in the 'Points Relied On.'" Where an argument is not contained in the points relied on, the argument is not preserved for appellate review. *See Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 763 n.4 (Mo. banc 2010).

"Despite the mandatory nature of the requirements of Rule 84.04, this Court has discretion to review non-compliant briefs *ex gratia* where the argument is readily understandable." *Null v. New Haven Care Ctr., Inc.*, 425 S.W.3d 172, 177-78 (Mo. App. E.D. 2014) (citing *Moreland v. Div. of Emp't Sec.*, 273 S.W.3d 39, 41 (Mo. App. W.D. 2008)). Plaintiffs' argument that the trial court erred in concluding that their challenges to the facial constitutionality of the Proposed Measure are not ripe for adjudication is readily

---

[8]The Plaintiffs in this case were not parties in *Reeves*.

[9]All references to Rules are to *Missouri Court Rules, Volume I -- State, 2016* unless otherwise noted.

understandable. And it is an argument that was plainly raised in Plaintiffs' trial brief. Thus, Plaintiffs' argument is of no surprise to the Secretary of State or the Intervenors. Given the highly expedited nature of this appeal, it would serve no purpose to avoid discussion of a readily understandable claim of error by insisting on rigid compliance with Rule 84.04(e). That is particularly so as the claim that challenges to the facial constitutionality of the Proposed Measure are entitled to pre-election review could be fairly read as related to the claim expressly set forth in Plaintiffs' first point on appeal. We thus exercise our discretion to address Plaintiffs' contention that the trial court erred by concluding that Plaintiffs' constitutional challenges to the Proposed Measure were not ripe for adjudication because challenges to the facial validity of the Proposed Measure are entitled to pre-election review.

## C.

The rationale for limiting pre-election review of the constitutionality of an initiative petition is explained in *Brown v. Carnahan*, 370 S.W.3d 637 (Mo. banc 2012):

> Nothing in our constitution so closely models participatory democracy in its pure form [as the citizen initiative petition process]. Through the initiative process, those who have no access to or influence with elected representatives may take their cause directly to the people. The people, from whom all constitutional authority is derived, have reserved the "power to propose and enact or reject laws and amendments to the Constitution."

*Id.* at 645 (quoting *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990) (quoting MO. CONST., art. III, sec. 49)). "To avoid encroachment on the people's constitutional authority, courts will not sit in judgment on the wisdom or folly of the initiative proposal presented, nor will this Court issue an advisory opinion as to whether a particular proposal, *if adopted*, would violate a superseding law of this state or

11

the United States Constitution." *Id*. (emphasis added) (citing *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827). "When courts are called upon to intervene in the initiative process, they must act with restraint, trepidation and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course." *Id*. (quoting *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827).

The judiciary's authority to determine pre-election challenges to initiative petition ballot measures is thus extremely limited. *Brown* reinforced that pre-election review can only be conducted when constitutional challenges to an initiative petition satisfy two criteria. "Before the people vote on an initiative, courts may consider only those threshold issues that affect the integrity of the election itself, ***and*** that are so clear as to constitute a matter of form." *Id*. (emphasis added) (quoting *United Gamefowl Breeders Ass'n of Missouri v. Nixon*, 19 S.W.3d 137, 139 (Mo. banc 2000)). "[W]hen initiative petitions are challenged, [our] primary duty is to determine 'whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions, have been regarded.'" *Id*. (quoting *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827).

The restraint on our authority to entertain pre-election challenges means that "we will not look behind the face of the petition to determine its constitutionality prior to its being voted on by the electorate." *Union Elec. Co. v. Kirkpatrick*, 678 S.W.2d 402, 405 (Mo. banc 1984) (citing *State ex rel. Dahl v. Lange*, 661 S.W.2d 7, 8 (Mo. banc 1983); *Moore v. Brown*, 165 S.W.2d 657 (Mo. banc 1942); *Pitman v. Drabelle*, 183 S.W. 1055, 1057 (Mo. 1916)). We "may [only] look beyond the face of [an initiative] petition to the

12

extent necessary *to determine whether constitutional and statutory requirements pertaining to the form of the petition* have been satisfied." *Id.* (emphasis added). It is in this context, and only in this context, therefore, that we are permitted to "review allegations that an initiative is facially unconstitutional."[10] *Knight*, 282 S.W.3d at 21 (citing *Union Elec. Co.*, 678 S.W.2d at 405). Even then, pre-election review will be permitted only when the constitutional violation "is *so obvious as to constitute a matter of form*." *Id.* (emphasis added).

A violation of a constitutional provision pertaining to the procedure or form of an initiative petition that is so obvious as to constitute a matter of form is afforded pre-election review because such challenges do not seek an advisory opinion regarding the

---

[10]*Knight* uses the phrase "facially unconstitutional" in describing whether challenges to an initiative petition are subject to pre-election review. The phrase "facially unconstitutional," or some ideation thereof, has since been repeated by our courts in addressing the ripeness of pre-election challenges. *See, e.g.*, *Reeves*, 462 S.W.3d at 857; *City of Kansas City v. Chastain*, 420 S.W.3d 550, 554 (Mo. banc 2014); *Kuehner v. Kander*, 442 S.W.3d 224, 228 (Mo. App. W.D. 2014). *Knight's* use of the phrase "facially unconstitutional" creates unintended and unfortunate confusion. We use this opportunity to clarify what *Knight*, and other courts, necessarily mean by the phrase.

*Knight's* reference to "facial unconstitutionality" is followed by citation to the Missouri Supreme Court's decision in *Union Electric Co. v. Kirkpatrick*, 678 S.W.2d 402, 405 (Mo. banc 1984). *Union Electric Co.* held that "barring exceptional circumstances, we will not look behind the *face* of the [initiative] petition to determine its constitutionality prior to its being voted on by the electorate[,] . . . [and] the Secretary of State and the courts . . . may look beyond the *face* of the petition [only] to the extent necessary to determine whether constitutional and statutory requirements pertaining to the form of the [initiative] petition have been satisfied." 678 S.W.2d at 405 (emphasis added). *Union Electric Co.*'s reference to the "face" of an initiative petition thus provides the necessary context for construing *Knight's* use of the phrase "facially unconstitutional." *Knight* recognized as much, as it observed that "[b]efore a vote is held on a measure, the judiciary may review *only* 'those threshold issues that affect the integrity of the election itself, *and* that are so clear as to constitute a matter of form.'" 282 S.W.3d at 22 (quoting *United Gamefowl Breeders*, 19 S.W.3d at 139).

Similarly, *in State ex rel. Hazelwood Yellow Ribbon Committee v. Klos*, 35 S.W.3d 457, 468 (Mo. App. E.D. 2000), the Eastern District stated that "our Supreme Court has indicated that pre-election review is permissible in cases where the measure is clearly facially unconstitutional." For this proposition, the Eastern District quotes from *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827, where the Supreme Court did not use the phrase "facially unconstitutional," but instead held narrowly that "'[o]ur single function is to ask whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions, have been regarded.'" *Hazelwood Yellow Ribbon* Committee, 35 S.W.3d at 468.

Plainly, in determining the ripeness of pre-election challenges for judicial review, the phrase "facial constitutionality" refers *only* to whether an initiative petition violates a constitutional or statutory requirement pertaining to its procedure and form.

13

constitutionality of an initiative petition, *if adopted*. Rather, such challenges pertain primarily to the *current* constitutional status of an initiative petition, as they address compliance with express "conditions precedent to placing a proposal on the ballot." *Missourians to Protect the Initiative Process*, 799 S.W.2d at 828. Pre-election judicial review of a constitutional challenge pertaining to the required "form" of an initiative petition is thus appropriate because "*regardless of the meritorious substance* of a proposition, if the prerequisites of [the Missouri Constitution pertaining to the procedure and form of an initiative petition] are not met, the proposal is not to be on the ballot." *Id.* (emphasis added). In other words, "a judicial opinion as to whether the constitutional requirements [for placing an initiative petition on the ballot] have been met is no longer hypothetical or advisory." *Id.*

Some challenges to an initiative petition are routinely deemed eligible for pre-election judicial review because they easily meet both of the criteria reiterated in *Brown*. One such example is where an initiative petition is claimed to violate article III, section 50 of the Missouri Constitution[11] because it contains more than one subject or amends more than one constitutional provision. *Id.* at 828-29 (holding that "[a]ny controversy as to whether the prerequisites of article III, section 50 have been met is ripe for judicial determination when the Secretary of State makes a decision to submit, or refuse to submit,

---

[11]MO. CONST. art. III, sec. 50 provides, in pertinent part, that: "Petitions for constitutional amendments shall not contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith." *See also* MO. CONST. art. XII, sec. 2(b) (providing, in pertinent part, that: "No such proposed amendment [by the general assembly or by the initiative] shall contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith").

an initiative to the voters"); *see also Moore*, 165 S.W.2d at 659-60 (entertaining pre-election challenge to constitutionality of initiative petition involving claim that measure contained more than one subject and amended constitutional provisions beyond those it purported to amend). Such challenges address a constitutional provision pertaining to the required procedure and form of an initiative petition, and by their nature allege a violation that can be readily gauged, rendering it so obvious as to be a matter of form.

Another such example is a constitutional challenge pertaining to the provision in article III, section 51 of the Missouri Constitution[12] prohibiting initiative petitions from being used for the "appropriation of money other than of new revenues created and provided for thereby." As with article III, section 50 "single-subject" and "single-amendment" challenges, a challenge alleging a violation of this provision of the Missouri Constitution involves the constitutionally required procedure or form of an initiative petition and can be readily gauged, often from the language of the initiative itself, as to be an obvious matter of form. *See, e.g., Kansas City v. McGee*, 269 S.W.2d 662, 664-66 (Mo. 1954). In fact, an alleged violation of the appropriations provision of article III, section 51 of the Missouri Constitution was at issue in *City of Kansas City v. Chastain*, 420 S.W.3d 550 (Mo. banc 2014). There, our Supreme Court held that the trial court had been authorized "to conduct pre-election review of the facial constitutionality[13] of an initiative petition" because the issue was whether the proposed ordinance was plainly "an

---

[12]MO. CONST. art. III, sec. 51 provides that: "The initiative shall not be used for the appropriation of money other than of new revenues created and provided for thereby, or for any other purpose prohibited by this constitution."
        [13]*See supra* note 10.

unconstitutional appropriation ordinance under [a]rticle III, section 51 of the Missouri Constitution." *Chastain*, 420 S.W.3d at 554-55 (citing *Missourians to Protect the Initiative Process*, 799 S.W.2d at 828). *Chastain*'s citation to *Missourians to Protect the Initiative Process* demonstrates the Supreme Court's consistency in limiting pre-election judicial review of challenges to initiative petitions to whether there are obvious violations of express constitutional or statutory "conditions precedent to placing a proposal on the ballot." *Missourians to Protect the Initiative Process*, 799 S.W.2d at 828. In fact, *Chastain* found that the "plain language of the proposed ordinance" demonstrated it was not an appropriation ordinance that violated article III, section 51 of the Missouri Constitution. 420 S.W.3d at 555.

Though violations of some constitutional provisions pertaining to the procedure or form of an initiative petition inherently involve issues so obvious as to be a matter of form, pre-election review is not assured simply because a challenge to an initiative petition alleges a violation of a constitutional provision pertaining to the procedure or form of an initiative. As previously explained, a pre-election challenge must meet *two* requirements: it must involve a '"threshold issue[] that affect[s] the integrity of the election itself, *and* [be] so clear as to constitute a matter of form."' *Brown*, 370 S.W.3d at 645 (emphasis added) (quoting *United Gamefowl Breeders*, 19 S.W.3d at 139). This point is demonstrated by *Union Electric Co.*, where a pre-election challenge was denied judicial review even though it alleged that an initiative petition violated article III, section 50 of the Missouri

16

Constitution[14] because "it . . . was not signed by eight percent of the legal voters in each of two-thirds of Missouri's congressional districts." 678 S.W.2d at 404. The resolution of that issue would have required the Supreme Court to determine whether the initiative petition proposed a constitutional amendment (which requires signatures by eight percent of legal voters) or a statute (which only requires signatures by five percent of legal voters). Our Supreme Court held that:

> [Although] courts . . . may look beyond the face of [an initiative] petition to the extent necessary **to determine whether constitutional and statutory requirements pertaining to the form of the petition** have been satisfied[,] . . . [t]his limited inquiry . . . does not permit an evaluation of the merits of any constitutional objection to the proposal under the guise of determining whether the initiative petition in fact proposes a constitutional amendment [or a law].

*Id*. at 405 (emphasis added) (citations omitted). In short, even where a challenge purports to involve a constitutional provision pertaining to the required procedure or form of an initiative petition, the challenge will not be heard pre-election *unless* the issue required to be resolved by the alleged violation is so clear and settled as to constitute an obvious matter of form. This two-criterion framework for determining whether constitutional challenges are entitled to pre-election judicial review is in keeping with the directive that "[w]hen courts are called upon to intervene in the initiative process, they must act with restraint, trepidation and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course." *Brown*, 370 S.W.3d at 645 (alteration in

---

[14]MO. CONST. art. III, sec. 50 provides, in pertinent part, that: "Initiative petitions proposing amendments to the constitution shall be signed by eight percent of the legal voters in each of two-thirds of the congressional districts in the state, and petitions proposing laws shall be signed by five percent of such voters. Every such petition . . . shall contain an enacting clause."

17

original) (quoting *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827).  And the two-criterion framework logically recognizes that pre-election judicial review should be limited to challenges primarily pertaining to the ***current*** constitutional status of an initiative petition that fails to satisfy express "conditions precedent to placing a proposal on the ballot" in a manner so obvious as to be a matter of form.  *Missourians to Protect the Initiative Process*, 799 S.W.2d at 828.

Plaintiffs rely heavily on *State ex rel. Hazelwood Yellow Ribbon Committee v. Klos*, 35 S.W.3d 457 (Mo. App. E.D. 2000) for the proposition that a constitutional challenge to the facial validity of an initiative petition need only involve a clear and settled issue of law to be entitled to pre-election review.  According to Plaintiffs, it is unnecessary to allege a violation of a constitutional provision pertaining to the required procedure or form of an initiative petition.  Plaintiffs' reading of *Hazelwood Yellow Ribbon Committee* is without merit.  We have already explained that "facial invalidity" or "facial unconstitutionality" in the context of determining whether pre-election challenges to initiative petitions are ripe for judicial review refers only to obvious violations of constitutional and statutory requirements pertaining to the procedure and form of initiative petitions.[15]

Moreover, the Eastern District could not have announced such a broad standard for permitting pre-election review of the constitutionality of initiative petitions, as Missouri Supreme Court precedent is to the contrary.  *See Christianson v. Goucher*, 414 S.W.3d 584, 592 (Mo. App. W.D. 2013) (observing that "this court is 'constitutionally bound to

---

[15]*See supra* note 10.

18

follow the most recent controlling decision of the Missouri Supreme Court'") (quoting *Doe v. Roman Catholic Diocese of St. Louis*, 311 S.W.3d 818, 822 (Mo. App. E.D. 2010)). In 2012, when *Brown* reiterated the two-criterion standard which must be established to permit pre-election review of constitutional challenges to an initiative petition, our Supreme Court quoted from *United Gamefowl Breeders*, a Missouri Supreme Court decision from May 2000. *Brown*, 370 S.W.3d at 645 (quoting *United Gamefowl Breeders*, 19 S.W.3d at 139). The Eastern District's November 2000 decision in *Hazelwood Yellow Ribbon Committee* was bound by this precedent. Moreover, *United Gamefowl Breeders* was not the first time our Supreme Court defined the parameters of permitted judicial review of pre-election challenges to initiative petitions by reference to two criteria. In *State ex rel. Trotter v. Cirtin*, 941 S.W.2d 498 (Mo. banc 1997), the seminal case relied on by the Eastern District in *Hazelwood Yellow Ribbon Committee* to explain its decision to conduct pre-election judicial review, our Supreme Court held that only issues so "clear or settled as to constitute matters of form" ***and*** involving "constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions," could be afforded pre-election judicial review. *Trotter*, 941 S.W.2d at 500.

Thus, *Hazelwood Yellow Ribbon Committee* cannot be permissibly relied on to argue that pre-election review of constitutional challenges is proper whenever, and merely because, the challenge involves a clear and settled issue of law.[16] The legal clarity of a

---

[16]*Hazelwood Yellow Ribbon Committee* held that "in some instances, issues of substantive legality can be so 'clear or settled' as to effectively be tantamount to mere 'matters of form.'" *State ex rel. Hazelwood Yellow Ribbon Comm. v. Klos*, 35 S.W.3d 457, 468-69 (Mo. App. E.D. 2000) (quoting *State ex rel. Trotter v. Cirtin*, 941

constitutional challenge to an initiative petition will not authorize pre-election review *unless* the challenge involves a constitutional provision "relating to the procedure and form of initiative petitions." *Brown*, 370 S.W.3d at 645 (quoting *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827). A careful reading of *Hazelwood Yellow Ribbon Committee* demonstrates, in fact, that the Eastern District conducted pre-election review consistent with this two-criterion standard.

*Hazelwood Yellow Ribbon Committee* addressed an initiative measure that had the purpose of giving voters in charter cities the power to control whether TIF Redevelopment Plans would be permitted by requiring a "two-thirds majority referendum vote of approval by the [City of] Hazelwood voters, as a necessary condition precedent to the City's adopting any future TIF Redevelopment Plan or Project." 35 S.W.3d at 469. The initiative measure's purpose plainly violated an existing statute, section 99.835.3, which provided that "[n]o referendum approval of the electors shall be required as a condition to the issuance of [TIF] obligations." *Id*. As a result, the initiative measure plainly violated "[a]rticle VI, § 19(a) of the Missouri Constitution [which] provides . . . charter cities" with "powers . . . consistent with the constitution of this state and . . . not limited or denied either

S.W.2d 498, 500 (Mo. banc 1997)). This holding is leading readers astray, and must be read in context. The sentence the Eastern District cited from *Trotter* is immediately preceded by *Trotter's* holding that in pre-election contests "[o]ur *single function* is to ask whether the constitutional requirements and limits of power, *as expressed in the provisions relating to the procedure and form of initiative petitions*, have been regarded." *Trotter*, 799 S.W.2d at 500 (emphasis added) (quoting *Missourians to Protect the Initiative Process*, 799 S.W.2d at 827). Thus, *Trotter's* reference to pre-election review of issues of law "so clear or settled as to constitute matters of form" was not expressed as in independent exception to the general rule forbidding pre-election review of constitutional challenges to initiative petitions, but instead *modified* the ability to review even those challenges involving the procedure and form of initiative petitions. In other words, *Trotter* articulated the same two-criterion framework for determining whether a constitutional challenge to an initiative petition is eligible for pre-election review most recently reiterated in *Brown,* 370 S.W.3d at 645.

20

by the charter so adopted or by statute." *Id.* Article III, section 51 of the Missouri Constitution provides that an initiative petition "shall not be used . . . for any . . . purpose prohibited by this constitution," and thus pertains to the required procedure and form of an initiative petition. Because the challenge in *Hazelwood Yellow Ribbon Committee* involved a constitutional provision that addressed the required procedure or form of an initiative petition (article III, section 51), **and** "so clear [an issue] as to constitute a matter of form," pre-election judicial review of the challenge was proper. *Brown*, 370 S.W.3d at 645. The challenge in *Hazelwood Yellow Ribbon Committee* thus comported with the rationale permitting pre-election review because "regardless of the meritorious substance of a proposition, if the prerequisites of article III, § [51] are not met, the proposal is not to be on the ballot." *Missourians to Protect the Initiative Process*, 799 S.W.2d at 828.

**D.**

Having addressed the two criterion framework our Supreme Court has long identified as essential to authorizing pre-election review of constitutional challenges to an initiative petition, we now explain why those criteria are not met by the constitutional challenges asserted in Plaintiffs' Petition.

The Petition does not allege that the Proposed Measure violates article III, section 50 or section 51 of the Missouri Constitution, or any other Missouri constitutional provision pertaining to the required procedure or form of an initiative petition, the first prong of the two-criterion standard reiterated in *Brown*. In other words, the Petition does not allege "threshold issues that affect the integrity of the election itself." *Brown*, 370 S.W.3d at 645 (quoting *United Gamefowl Breeders*, 19 S.W.3d at 139). Instead, the

21

Petition asserts First Amendment, Equal Protection Clause, and Privileges and Immunities Clause challenges to the Proposed Measure. Constitutional challenges of this nature are routinely denied pre-election judicial review, as they do not involve Missouri constitutional or statutory provisions pertaining to the required procedure or form of an initiative petition. *See, e.g.*, *Union Elec. Co*., 678 S.W.2d at 405-06 (holding that pre-election claims that an initiative is unconstitutional on its face because it draws an unreasonable distinction between electrical corporations and other utilities, constitutes a taking without due process of law, is retrospective in effect, impairs existing contract rights, and is preempted by federal legislation "are not ripe for decision"); *Kuehner*, 442 S.W.3d at 230 (holding that pre-election challenge of initiative petition because it would retrospectively modify existing collective bargaining agreements "addresses a substantive, and not a procedural or facial, constitutional concern that is not ripe for our consideration"); *Knight*, 282 S.W.3d at 21-22 (holding that pre-election constitutional challenges that initiative petition violated various provisions addressing use of gambling revenues for education, permitting the legislature to license riverboat gambling, and prohibiting special laws granting exclusives rights and privileges, and violated equal protection rights, were not ripe for adjudication).

As we have explained, a challenge involving a State constitutional provision that does not pertain to the procedure or form of an initiative petition *might* be eligible for pre-election review *if* the State constitutional provision is clearly and obviously violated by the purpose of an initiative petition, thus violating the "purpose" clause of article III, section

22

51 of the Missouri Constitution.[17] *See Hazelwood Yellow Ribbon Committee*, 35 S.W.3d at 469. Plaintiffs' constitutional challenges are not entitled to pre-election review via this narrow avenue for several reasons.

First, their Federal constitutional challenges could never qualify as a "purpose prohibited by this [meaning Missouri's] constitution." MO. CONST. art. III, sec. 51. Second, as observed, the Petition does not allege that the Proposed Measure violates the "purpose" clause of article III, Section 51 of the Missouri Constitution. Although Plaintiffs make this assertion in their appellate brief, they do so only in connection with the ***second*** point on appeal, which addresses the merits of their constitutional challenges. [Pls.' Br. 16] Plaintiffs do not argue in connection with their first point on appeal that their challenges were entitled to pre-election review because the Proposed Measure violates the "purpose" clause of article III, section 51 of the Missouri Constitution. Even had this argument been made as a part of Plaintiffs' first point on appeal, the argument would not have been preserved. Plaintiffs did not allege a violation of article III, section 51 of the Missouri Constitution at the earliest opportunity.[18] "To properly raise a constitutional challenge, a party must: [*inter alia*] (1) raise the constitutional question at the first opportunity . . . ." *Peters v. Johns*, 489 S.W.3d 262, 269 (Mo. banc 2016). "This rule is intended to prevent surprise to the opposing party and to accord the circuit court an

---

[17]It is important to observe that this provision is limited to purposes that violate the Missouri Constitution, and makes no reference to the Federal Constitution.

[18]It appears from the Record on Appeal that a violation of article III, section 51 was first raised by Plaintiffs in the proposed judgment submitted to the trial court for its consideration *after* the trial court heard oral arguments from counsel based on the parties' stipulated facts and exhibits. As noted, *supra* note 6, the parties' oral arguments to the trial court on the merits were not transcribed.

opportunity to fairly identify and rule on the issue." *Id.* Because Plaintiffs failed to raise a claimed violation of article III, section 51 "at the earliest opportunity, it is waived." *Id.* (holding that equal protection challenge not raised in plaintiff's pleadings was waived, notwithstanding "the accelerated timetable on which these election cases are decided").

Third, even if a violation of the "purpose" clause of article III, section 51 of the Missouri Constitution had been preserved for our review, Plaintiffs would be unable to establish that the violation is so clear and settled an issue as to constitute an obvious matter of form. The "purposes" of the Missouri Constitution allegedly violated by the Proposed Measure based on the Petition (article I, section 8 protecting free speech and association rights, and article I, section 2 affording equal protection)[19] require by their very nature a comparative assessment of the impairment of the constitutional right and the State interest involved, as conceded in the Petition and in Plaintiffs' Brief on appeal. [Petition ¶ 28 alleging the Proposed Measure is "an unreasonable restriction on speech and freedom of association in that it is neither reasonably related to nor narrowly tailored to" address a state interest; Petition ¶ 32 alleging there is "no rational basis" for the alleged disparate treatment caused by section 23.3 of the Proposed Measure; Pls.' Br. 19 noting "burden[s] [on] political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest;" and Pls.' Br. 26 noting "differential treatment . . . must be evaluated according to a strict scrutiny standard, which requires the Government to prove that the restriction

---

[19]No corollary provision of the Missouri Constitution addresses the Privileges and Immunities Clause of the Federal Constitution, the subject of Count III in the Petition.

24

furthers a compelling interest and is narrowly tailored to achieve that interest."] It cannot be said that the Proposed Measure's purpose is so clearly and obviously prohibited by article 1, section 2 or section 8 of the Missouri Constitution as to constitute a matter of form. If the issue in *Union Electric Co.*, which was whether an initiative petition proposed an amendment to the constitution or a new law, was not so clear and settled as to constitute an obvious matter of form, 678 S.W.2d at 405, then it is difficult to conceive that complex substantive constitutional challenges like those raised in the Petition can ever satisfy this required criteria for pre-election judicial review.[20]

Finally, the "purpose" clause in article III, section 51 of the Missouri Constitution cannot be interpreted as broadly as Plaintiffs suggest to "facially" defeat every initiative petition whose purpose is to modify an existing article of the constitution. Article III, section 50 and article XII, section 2(b) of the Missouri Constitution plainly envision use of the initiative petition process to "amend and revise" existing articles of the constitution. Though we need not define the precise parameters of the "purpose" clause to resolve this

---

[20]Plaintiffs argue in connection with point two on appeal that language identical to that set forth in section 23.3(12) of the Proposed Measure has been "repeatedly" declared unconstitutional by Missouri courts. If that were the case, it might be a closer call whether the Proposed Measure clearly and obviously violates article III, section 51 because its purpose violates another purpose of the Missouri Constitution. However, Plaintiffs' representation is inaccurate. In making their argument, Plaintiffs rely first on the trial court decision that gave rise to our appellate review in *Reeves*, the outcome of which vacated the trial court's decision. Plaintiffs next suggest that we decided the Proposed Measure's constitutionality in *Reeves* by holding that neither "the passage of time [n]or the gathering of signatures will change the relative merits of Reeves's claim." 462 S.W.3d at 857. *Reeves* did not determine the constitutionality of the Proposed Measure, and instead declined to reach that issue because it was not ripe for adjudication. The referenced sentence from *Reeves* was not an endorsement of the trial court's determination about the constitutionality of the Proposed Measure, and did no more than note that Reeves's ability to adjudicate her claims would not be impaired by the passage of time. Finally, Plaintiffs suggest that language identical to that contained in section 23.3(12) was declared unconstitutional in *Legends Bank v. State*, 361 S.W.3d 383 (Mo. banc 2012), where the Supreme Court addressed the constitutionality of Subsection 13 of Section 130.01, Senate Bill 844 (2010). Though the Supreme Court did declare similar language unconstitutional in *Legends*, it did so on procedural grounds because the subject bill had been amended in its passage as to change its original purpose. *Id*. at 387. *Legends* did not address the substantive constitutionality of the language which now appears in section 23.3(12) of the Proposed Measure at all, let alone on First Amendment or Equal Protection grounds.

25

case, we comfortably conclude that the clause is not so broad in scope as to permit the argument that every initiative petition which modifies an existing article of the Missouri Constitution violates article III, section 51 because that purpose is prohibited by the Missouri Constitution.

In short, Plaintiffs' constitutional challenges to the Proposed Measure are not ripe for pre-election judicial review as they do not raise "threshold issues that affect the integrity of the election itself and . . . are [not] so clear as to constitute a matter of form." *Brown*, 370 S.W.3d at 645 (quoting *United Gamefowl Breeders*, 19 S.W.3d at 139). Any argued confusion regarding the permitted scope of pre-election judicial review falls away when this two-criterion standard for determining ripeness of pre-election challenges to initiative petitions is viewed and applied in the proper context. Plaintiffs' Petition was filed pursuant to section 116.200.1, the statute which affords authority to file pre-election challenges to a Secretary of State's decision to certify an initiative petition as sufficient or insufficient. Section 116.200.1 provides:

> After the secretary of state certifies a petition as sufficient or insufficient, any citizen may apply to the circuit court of Cole County to compel him to reverse his decision. . . . within ten days after the certification is made.

The pre-election judicial review authorized by this section must necessarily be tailored, therefore, to the Secretary of State's sufficiency determination, a subject addressed by section 116.120.1. Section 116.120.1 requires the Secretary of State to determine whether an initiative petition "complies with the Constitution of Missouri and with this chapter" before certifying the petition as sufficient or insufficient. The sufficiency determination the Secretary of State is required to conduct plainly does not include whether an initiative

26

petition complies with the ***Federal*** Constitution. The sufficiency determination the Secretary of State is required to conduct does include whether an initiative petition complies with "the Constitution of Missouri and this chapter." A plain reading of Chapter 116 reveals that the General Assembly intended this phrase to refer to constitutional and statutory provisions pertaining to the procedure and form required to certify an initiative petition as sufficient to appear on the ballot. In fact, our Supreme Court has so held. *See Union Elec. Co.*, 678 S.W.2d at 405 (holding that "barring exceptional circumstances, we will not look behind the face of the [initiative] petition to determine its constitutionality prior to its being voted on by the electorate[,] . . . [and] *the Secretary of State* and the courts . . . *may look beyond the face of the petition [only] to the extent necessary to determine whether constitutional and statutory requirements pertaining to the form of the [initiative] petition have been satisfied*") (emphasis added). *See also*, *Ketchum v. Blunt*, 847 S.W.2d 824, 830-31 (Mo. App. W.D. 1992) ("It is the secretary of state who is charged with the ultimate ***administrative*** determination as to whether the petition complies with the Constitution of Missouri and with the statutes.") (emphasis added) (citing section 116.120.1 and 116.150; *Missourians to Protect the Initiative Process*, 799 S.W.2d at 828).

Simply stated, challenges to an initiative petition which go beyond determining compliance with constitutional and statutory provisions pertaining to the required procedure and form of a "sufficient" initiative petition are not ripe for pre-election judicial review. They exceed the scope of the sufficiency determinations the Secretary of State is authorized and required to make before certifying an initiative petition for inclusion on the ballot.

27

**E.**

The trial court did not commit error in entering Judgment in favor of the Secretary of State and the Intervenors, and against the Plaintiffs, on all counts raised in the Petition because the Plaintiffs' constitutional challenges to the Proposed Measure are not ripe for pre-election judicial review.

Because we affirm the Judgment on this basis, we are not authorized to address the Judgment's alternative findings regarding the merits of Plaintiffs' constitutional challenges—findings the trial court was similarly not authorized to make, as the constitutional challenges are not ripe for adjudication. Plaintiffs' constitutional challenges can only be resolved in a properly filed post-election lawsuit should the Proposed Measure be adopted.[21]

**Conclusion**

The trial court's Judgment declaring Plaintiffs' constitutional challenges to the Proposed Measure not ripe for pre-election judicial review is affirmed.

_Cynthia L. Martin_

Cynthia L. Martin, Judge

All concur

---

[21]We express no opinion on the Plaintiffs' post-election standing to raise each or any of the constitutional challenges raised in the Petition. Nor do we intend to convey that this court would have jurisdiction to afford appellate review to the Plaintiffs' claims if asserted post-election. MO. CONST. art. V, sec. 3 provides that: "The supreme court shall have exclusive appellate jurisdiction in all cases involving the validity of a . . . provision of the constitution of this state." "Mere allegations of unconstitutionality, however, are insufficient to vest exclusive jurisdiction in the supreme court: 'The constitutional issue must be real and substantial, not merely colorable.'" *Knight*, 282 S.W.3d at 17 (quoting *McCormack v. Capital Elec. Constr. Co.*, 159 S.W.3d 387, 404 (Mo. App. W.D. 2004)).

28

County_____

Page No._____

It is a class A misdemeanor punishable, notwithstanding the provisions of section 560.021, RSMo, to the contrary, for a term of imprisonment not to exceed one year in the county jail or a fine not to exceed ten thousand dollars or both, for anyone to sign any initiative petition with any name other than his or her own, or knowingly to sign his or her name more than once for the same measure for the same election, or to sign a petition when such person knows he or she is not a registered voter.

### INITIATIVE PETITION

To the Honorable Jason Kander, Secretary of State for the state of Missouri:

We, the undersigned, registered voters of the state of Missouri and _____ County (or city of St. Louis), respectfully order that the following proposed amendment to the constitution shall be submitted to the voters of the state of Missouri, for their approval or rejection, at the general election to be held on the 8th day of November, 2016, and each for himself or herself says: I have personally signed this petition, I am a registered voter of the state of Missouri and _____ County (or city of St. Louis), my registered voting address and the name of the city, town or village in which I live are correctly written after my name.

### (OFFICIAL BALLOT TITLE)

### CIRCULATOR'S AFFIDAVIT

STATE OF MISSOURI, COUNTY OF _____

I, _____, being first duly sworn, say (print or type names of signers)

| NAME (Signature) | DATE SIGNED | REGISTERED VOTING ADDRESS (Street) (City, Town or Village) | ZIP CODE | CONG. DISTR. | NAME (Printed or Typed) |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |

signed this page of the foregoing petition, and each of them signed his or her name thereto in my presence, I believe that each has stated his or her name, registered voting address and city, town or village correctly, and that each signer is a registered voter of the state of Missouri and _____ County.

FURTHERMORE, I HEREBY SWEAR OR AFFIRM UNDER PENALTY OF PERJURY THAT ALL STATEMENTS MADE BY ME ARE TRUE AND CORRECT AND THAT I HAVE NEVER BEEN CONVICTED OF, FOUND GUILTY OF, OR PLEAD GUILTY TO ANY OFFENSE INVOLVING FORGERY.

I am at least 18 years of age. I do _____ do not_____(check one) expect to be paid for circulating this petition. If paid, list the payer _____.

_____
Signature of Affiant (Person obtaining signatures)

_____
(Printed Name of Affiant)

_____
Address of Affiant

Subscribed and sworn to before me this _____ day of _____, A.D. _____.

_____
Signature of Notary

Address of Notary:_____

Notary Public (Seal)

My commission expires _____

JOINT STIP. EXHIBIT 1

Electronically Filed - WESTERN DISTRICT CT OF APPEALS - September 01, 2016 - 11:35 AM

*BE IT RESOLVED by the people of the state of Missouri that the Constitution be amended:*

One new section is adopted by adding one new section to be known as section 23 of Article VIII to read as follows:

Section 23. 1. This section shall be known as the "Missouri Campaign Contribution Reform Initiative."

2. The people of the State of Missouri hereby find and declare that excessive campaign contributions to political candidates create the potential for corruption and the appearance of corruption; that large campaign contributions made to influence election outcomes allow wealthy individuals, corporations and special interest groups to exercise a disproportionate level of influence over the political process; that the rising costs of campaigning for political office prevent qualified citizens from running for political office; that political contributions from corporations and labor organizations are not necessarily an indication of popular support for the corporation's or labor organization's political ideas and can unfairly influence the outcome of Missouri elections; and that the interests of the public are best served by limiting campaign contributions, providing for full and timely disclosure of campaign contributions, and strong enforcement of campaign finance requirements.

3. (1) Except as provided in subdivisions (2), (3) and (4) of this subsection, the amount of contributions made by or accepted from any person other than the candidate in any one election shall not exceed the following:

(a) To elect an individual to the office of governor, lieutenant governor, secretary of state, state treasurer, state auditor, attorney general, office of state senator, office of state representative or any other state or judicial office, two thousand six hundred dollars.

(2) (a) No political party shall accept aggregate contributions from any person that exceed twenty-five thousand dollars per election at the state, county, municipal, district, ward, and township level combined.

(b) No political party shall accept aggregate contributions from any committee that exceed twenty-five thousand dollars per election at the state, county, municipal, district, ward, and township level combined.

(3) (a) It shall be unlawful for a corporation or labor organization to make contributions to a campaign committee, candidate committee, exploratory committee, political party committee or a political party; except that a corporation or labor organization may establish a continuing committee which may accept contributions or dues from members, officers, directors, employees or security holders.

(b) The prohibition contained in subdivision (a) of this subsection shall not apply to a corporation that:

(i) Is formed for the purpose of promoting political ideas and cannot engage in business activities; and

(ii) Has no security holders or other persons with a claim on its assets or income; and

(iii) Was not established by and does not accept contributions from business corporations or labor organizations.

(4) No candidate's candidate committee shall accept contributions from, or make contributions to, another candidate committee, including any candidate committee, or equivalent entity, established under federal law.

(5) Notwithstanding any other subdivision of this subsection to the contrary, a candidate's candidate committee may receive a loan from a financial institution organized under state or federal law if the loan bears the usual and customary interest rate, is made on a basis that assures repayments, is evidenced by a written instrument, and is subject to a due date or amortization schedule. The contribution limits described in this subsection shall not apply to a loan as described in this subdivision.

(6) No campaign committee, candidate committee, continuing committee, exploratory committee, political party committee, and political party shall accept a contribution in cash exceeding one hundred dollars per election.

(7) No contribution shall be made or accepted, directly or indirectly, in a fictitious name, in the name of another person, or by or through another person in such a manner as to conceal the identity of the actual source of the contribution or the actual recipient. Any person who receives contributions for a

JOINT STIP. EXHIBIT 1

Electronically Filed - WESTERN DISTRICT CT OF APPEALS - September 01, 2016 - 11:35 AM

committee shall disclose to that committee's treasurer, deputy treasurer or candidate the recipient's own name and address and the name and address of the actual source of each contribution such person has received for that committee.

(8) No anonymous contribution of more than twenty-five dollars shall be made by any person, and no anonymous contribution of more than twenty-five dollars shall be accepted by any candidate or committee. If any anonymous contribution of more than twenty-five dollars is received, it shall be returned immediately to the contributor, if the contributor's identity can be ascertained, and if the contributor's identity cannot be ascertained, the candidate, committee treasurer or deputy treasurer shall immediately transmit that portion of the contribution which exceeds twenty-five dollars to the state treasurer and it shall escheat to the state.

(9) The maximum aggregate amount of anonymous contributions which shall be accepted per election by any committee shall be the greater of five hundred dollars or one percent of the aggregate amount of all contributions received by that committee in the same election. If any anonymous contribution is received which causes the aggregate total of anonymous contributions to exceed the foregoing limitation, it shall be returned immediately to the contributor, if the contributor's identity can be ascertained, and, if the contributor's identity cannot be ascertained, the committee treasurer, deputy treasurer or candidate shall immediately transmit the anonymous contribution to the state treasurer to escheat to the state.

(10) Notwithstanding the provisions of subdivision (9) of this subsection, contributions from individuals whose names and addresses cannot be ascertained which are received from a fund-raising activity or event, such as defined in section 130.011, RSMo, as amended from time to time, shall not be deemed anonymous contributions, provided the following conditions are met:

(a) There are twenty-five or more contributing participants in the activity or event;

(b) The candidate, committee treasurer, deputy treasurer or the person responsible for conducting the activity or event makes an announcement that it is illegal for anyone to make or receive a contribution in excess of one hundred dollars unless the contribution is accompanied by the name and address of the contributor;

(c) The person responsible for conducting the activity or event does not knowingly accept payment from any single person of more than one hundred dollars unless the name and address of the person making such payment is obtained and recorded pursuant to the record-keeping requirements of section 130.036, RSMo, as amended from time to time;

(d) A statement describing the event shall be prepared by the candidate or the treasurer of the committee for whom the funds were raised or by the person responsible for conducting the activity or event and attached to the disclosure report of contributions and expenditures required by section 130.041, RSMo, as amended from time to time. The following information to be listed in the statement is in addition to, not in lieu of, the requirements elsewhere in this chapter relating to the recording and reporting of contributions and expenditures:

(i) The name and mailing address of the person or persons responsible for conducting the event or activity and the name and address of the candidate or committee for whom the funds were raised;

(ii) The date on which the event occurred;

(iii) The name and address of the location where the event occurred and the approximate number of participants in the event;

(iv) A brief description of the type of event and the fund-raising methods used;

(v) The gross receipts from the event and a listing of the expenditures incident to the event;

(vi) The total dollar amount of contributions received from the event from participants whose names and addresses were not obtained with such contributions and an explanation of why it was not possible to obtain the names and addresses of such participants;

(vii) The total dollar amount of contributions received from contributing participants in the event who are identified by name and address in the records required to be maintained pursuant to section 130.036, RSMo, as amended from time to time.

(11) No candidate or committee in this state shall accept contributions from any out-of-state committee unless the out-of-state committee from whom the contributions are received has filed a statement of organization pursuant to section 130.021, RSMo, as amended from time to time, or has

**102**

filed the reports required by sections 130.049 and 130.050, RSMo, as amended from time to time, whichever is applicable to that committee.

(12) Political action committees shall only receive contributions from individuals; unions; federal political action committees; and corporations, associations, and partnerships formed under chapters 347 to 360, RSMo, as amended from time to time, and shall be prohibited from receiving contributions from other political action committees, candidate committees, political party committees, campaign committees, exploratory committees, or debt service committees. However, candidate committees, political party committees, campaign committees, exploratory committees, and debt service committees shall be allowed to return contributions to a donor political action committee that is the origin of the contribution.

(13) The prohibited committee transfers described in subdivision (12) of this subsection shall not apply to the following committees:

(a) The state house committee per political party designated by the respective majority or minority floor leader of the house of representatives or the chair of the state party if the party does not have majority or minority party status;

(b) The state senate committee per political party designated by the respective majority or minority floor leader of the senate or the chair of the state party if the party does not have majority or minority party status.

(14) No person shall transfer anything of value to any committee with the intent to conceal, from the Missouri ethics commission, the identity of the actual source. Any violation of this subdivision shall be punishable as follows:

(a) For the first violation, the Missouri ethics commission shall notify such person that the transfer to the committee is prohibited under this section within five days of determining that the transfer is prohibited, and that such person shall notify the committee to which the funds were transferred that the funds must be returned within ten days of such notification;

(b) For the second violation, the person transferring the funds shall be guilty of a class C misdemeanor;

(c) For the third and subsequent violations, the person transferring the funds shall be guilty of a class D felony.

(15) No person shall make a contribution to a campaign committee, candidate committee, continuing committee, exploratory committee, political party committee, and political party with the expectation that some or all of the amounts of such contribution will be reimbursed by another person. No person shall be reimbursed for a contribution made to any campaign committee, candidate committee, continuing committee, exploratory committee, political party committee, and political party, nor shall any person make such reimbursement expect as provided in subdivision (5) of this subsection.

(16) No campaign committee, candidate committee, continuing committee, exploratory committee, political party committee, and political party shall knowingly accept contributions from:

(a) Any natural person who is not a citizen of the United States;

(b) A foreign government; or

(c) Any foreign corporation that does not have the authority to transact business in this state pursuant to Chapter 347, RSMo, as amended from time to time.

(17) Contributions from persons under fourteen years of age shall be considered made by the parents or guardians of such person and shall be attributed toward any contribution limits prescribed in this chapter. Where the contributor under fourteen years of age has two custodial parents or guardians, fifty percent of the contribution shall be attributed to each parent or guardian, and where such contributor has one custodial parent or guardian, all such contributors shall be attributed to the custodial parent or guardian.

(18) Each limit on contributions described in subdivisions (1), (2)(a), and (2)(b) of this subsection shall be adjusted by an amount based upon the average of the percentage change over a four year period in the United States Bureau of Labor Statistics Consumer Price Index for Kansas City, all items, all consumers, or its successor index, rounded to the nearest lowest twenty-five dollars and the percentage change over a four year period in the United States Bureau of Labor Statistics Consumer Price Index for St. Louis, all items, all consumers, or its successor index, rounded to the nearest lowest twenty-five dollars. The first adjustment shall be done in the first quarter of 2019, and then every four

**103**

years thereafter. The secretary of state shall calculate such an adjustment in each limit and specify the limits in rules promulgated in accordance with Chapter 536, RSMo, as amended from time to time.

4. (1) Notwithstanding the provisions of subsection 3 of section 105.957, RSMo, as amended from time to time, any natural person may file a complaint with the Missouri ethics commission alleging a violation of the provisions of section 3 of this Article by any candidate for elective office, within sixty days prior to the primary election at which such candidate is running for office, until after the general election. Any such complaint shall be in writing, shall state all facts known by the complainant which have given rise to the complaint, and shall be sworn to, under penalty of perjury, by the complainant.

(2) Within the first business day after receipt of a complaint pursuant to this section, the executive director shall supply a copy of the complaint to the person or entity named in the complaint. The executive director of the Missouri ethics commission shall notify the complainant and the person or entity named in the complaint of the date and time at which the commission shall audit and investigate the allegations contained in the complaint pursuant to subdivision (3) of this subsection.

(3) Within fifteen business days of receipt of a complaint pursuant to this section, the commission shall audit and investigate the allegations contained in the complaint and shall determine by a vote of at least four members of the commission that there are reasonable grounds to believe that a violation of law has occurred within the jurisdiction of the commission. The respondent may reply in writing or in person to the allegations contained in the complaint and may state justifications to dismiss the complaint. The complainant may also present evidence in support of the allegations contained in the complaint, but such evidence shall be limited in scope to the allegations contained in the original complaint, and such complaint may not be supplemented or otherwise enlarged in scope.

(4) If, after audit and investigation of the complaint and upon a vote of at least four members of the commission, the commission determines that there are reasonable grounds to believe that a violation of law has occurred within the jurisdiction of the commission, the commission shall proceed with such complaint as provided by sections 105.957 to 105.963, RSMo, as amended from time to time. If the commission does not determine that there are reasonable grounds to believe that such a violation of law has occurred, the complaint shall be dismissed. If a complaint is dismissed, the fact that such complaint was dismissed, with a statement of the nature of the complaint, shall be made public within twenty-four hours of the commission's action.

(5) Any complaint made pursuant to this section, and all proceedings and actions concerning such a complaint, shall be subject to the provisions of subsection 15 of section 105.961, RSMo, as amended from time to time.

(6) No complaint shall be accepted by the commission within fifteen days prior to the primary or general election at which such candidate is running for office.

5. Any person who knowingly and willfully accepts or makes a contribution in violation of any provision of section 3 of this Article or who knowingly and willfully conceals a contribution by filing a false or incomplete report or by not filing a required report under Chapter 130, RSMo, as amended from time to time, shall be held liable to the state in civil penalties in an amount of at least double and up to five times the amount of any such contribution.

6. (1) Any person who purposely violates the provisions of section 3 of this Article is guilty of a class A misdemeanor.

(2) Notwithstanding any other provision of law which bars prosecutions for any offenses other than a felony unless commenced within one year after the commission of the offense, any offense under the provisions of this section may be prosecuted if the indictment be found or prosecution be instituted within three years after the commission of the alleged offense.

(3) Any prohibition to the contrary notwithstanding, no person shall be deprived of the rights, guarantees, protections or privileges accorded by sections 130.011 to 130.026, 130.031 to 130.068, 130.072, and 130.081, RSMO, as amended from time to time, by any person, corporation, entity or political subdivision.

7. As used in this section, the following terms have the following meanings:

(1) "Appropriate officer" or "appropriate officers", the person or persons designated in section 130.026, or any successor section, to receive certain required statements and reports;

(2) "Candidate", an individual who seeks nomination or election to public office. The term "candidate" includes an elected officeholder who is the subject of a recall election, an individual who seeks nomination by the individual's political party for election to public office, an individual standing for retention in an election to an office to which the individual was previously appointed, an individual

**104**

JOINT STIP. EXHIBIT 1

who seeks nomination or election whether or not the specific elective public office to be sought has been finally determined by such individual at the time the individual meets the conditions described in paragraph (a) or (b) of this subdivision, and an individual who is a write-in candidate as defined in subdivision (26) of this section. A candidate shall be deemed to seek nomination or election when the person first:

(a) Receives contributions or makes expenditures or reserves space or facilities with intent to promote the person's candidacy for office; or

(b) Knows or has reason to know that contributions are being received or expenditures are being made or space or facilities are being reserved with the intent to promote the person's candidacy for office; except that, such individual shall not be deemed a candidate if the person files a statement with the appropriate officer within five days after learning of the receipt of contributions, the making of expenditures, or the reservation of space or facilities disavowing the candidacy and stating that the person will not accept nomination or take office if elected; provided that, if the election at which such individual is supported as a candidate is to take place within five days after the person's learning of the above-specified activities, the individual shall file the statement disavowing the candidacy within one day; or

(c) Announces or files a declaration of candidacy for office.

(3) "Cash", currency, coin, United States postage stamps, or any negotiable instrument which can be transferred from one person to another person without the signature or endorsement of the transferor.

(4) "Committee", a person or any combination of persons, who accepts contributions or makes expenditures for the primary or incidental purpose of influencing or attempting to influence the action of voters for or against the nomination or election to public office of one or more candidates or the qualification, passage or defeat of any ballot measure or for the purpose of paying a previously incurred campaign debt or obligation of a candidate or the debts or obligations of a committee or for the purpose of contributing funds to another committee.

(5) "Committee", does not include:

(a) A person or combination of persons, if neither the aggregate of expenditures made nor the aggregate of contributions received during a calendar year exceeds five hundred dollars and if no single contributor has contributed more than two hundred fifty dollars of such aggregate contributions;

(b) An individual, other than a candidate, who accepts no contributions and who deals only with the individual's own funds or property;

(c) A corporation, cooperative association, partnership, proprietorship, or joint venture organized or operated for a primary or principal purpose other than that of influencing or attempting to influence the action of voters for or against the nomination or election to public office of one or more candidates or the qualification, passage or defeat of any ballot measure, and it accepts no contributions, and all expenditures it makes are from its own funds or property obtained in the usual course of business or in any commercial or other transaction and which are not contributions as defined by subdivision (7) of this section;

(d) A labor organization organized or operated for a primary or principal purpose other than that of influencing or attempting to influence the action of voters for or against the nomination or election to public office of one or more candidates, or the qualification, passage, or defeat of any ballot measure, and it accepts no contributions, and expenditures made by the organization are from its own funds or property received from membership dues or membership fees which were given or solicited for the purpose of supporting the normal and usual activities and functions of the organization and which are not contributions as defined by subdivision (7) of this section;

(e) A person who acts as an authorized agent for a committee in soliciting or receiving contributions or in making expenditures or incurring indebtedness on behalf of the committee if such person renders to the committee treasurer or deputy treasurer or candidate, if applicable, an accurate account of each receipt or other transaction in the detail required by the treasurer to comply with all record-keeping and reporting requirements; or

(f) Any department, agency, board, institution or other entity of the state or any of its subdivisions or any officer or employee thereof, acting in the person's official capacity.

(6) The term "committee" includes, but is not limited to, each of the following committees: campaign committee, candidate committee, continuing committee and political party committee;

Electronically Filed - WESTERN DISTRICT CT OF APPEALS - September 01, 2016 - 11:35 AM

(a) "Campaign committee", a committee, other than a candidate committee, which shall be formed by an individual or group of individuals to receive contributions or make expenditures and whose sole purpose is to support or oppose the qualification and passage of one or more particular ballot measures in an election or the retention of judges under the nonpartisan court plan, such committee shall be formed no later than thirty days prior to the election for which the committee receives contributions or makes expenditures, and which shall terminate the later of either thirty days after the general election or upon the satisfaction of all committee debt after the general election, except that no committee retiring debt shall engage in any other activities in support of a measure for which the committee was formed;

(b) "Candidate committee", a committee which shall be formed by a candidate to receive contributions or make expenditures in behalf of the person's candidacy and which shall continue in existence for use by an elected candidate or which shall terminate the later of either thirty days after the general election for a candidate who was not elected or upon the satisfaction of all committee debt after the election, except that no committee retiring debt shall engage in any other activities in support of the candidate for which the committee was formed. Any candidate for elective office shall have only one candidate committee for the elective office sought, which is controlled directly by the candidate for the purpose of making expenditures. A candidate committee is presumed to be under the control and direction of the candidate unless the candidate files an affidavit with the appropriate officer stating that the committee is acting without control or direction on the candidate's part;

(c) "Continuing committee", a committee of continuing existence which is not formed, controlled or directed by a candidate, and is a committee other than a candidate committee or campaign committee, whose primary or incidental purpose is to receive contributions or make expenditures to influence or attempt to influence the action of voters whether or not a particular candidate or candidates or a particular ballot measure or measures to be supported or opposed has been determined at the time the committee is required to file any statement or report pursuant to the provisions of this chapter. "Continuing committee" includes, but is not limited to, any committee organized or sponsored by a business entity, a labor organization, a professional association, a trade or business association, a club or other organization and whose primary purpose is to solicit, accept and use contributions from the members, employees or stockholders of such entity and any individual or group of individuals who accept and use contributions to influence or attempt to influence the action of voters. Such committee shall be formed no later than sixty days prior to the election for which the committee receives contributions or makes expenditures; and

(d) "Connected organization", any organization such as a corporation, a labor organization, a membership organization, a cooperative, or trade or professional association which expends funds or provides services or facilities to establish, administer or maintain a committee or to solicit contributions to a committee from its members, officers, directors, employees or security holders. An organization shall be deemed to be the connected organization if more than fifty percent of the persons making contributions to the committee during the current calendar year are members, officers, directors, employees or security holders of such organization or their spouses.

(7) "Contribution", a payment, gift, loan, advance, deposit, or donation of money or anything of value for the purpose of supporting or opposing the nomination or election of any candidate for public office or the qualification, passage or defeat of any ballot measure, or for the support of any committee supporting or opposing candidates or ballot measures or for paying debts or obligations of any candidate or committee previously incurred for the above purposes. A contribution of anything of value shall be deemed to have a money value equivalent to the fair market value. "Contribution" includes, but is not limited to:

(a) A candidate's own money or property used in support of the person's candidacy other than expense of the candidate's food, lodging, travel, and payment of any fee necessary to the filing for public office;

(b) Payment by any person, other than a candidate or committee, to compensate another person for services rendered to that candidate or committee;

(c) Receipts from the sale of goods and services, including the sale of advertising space in a brochure, booklet, program or pamphlet of a candidate or committee and the sale of tickets or political merchandise;

(d) Receipts from fund-raising events including testimonial affairs;

(e) Any loan, guarantee of a loan, cancellation or forgiveness of a loan or debt or other obligation by a third party, or payment of a loan or debt or other obligation by a third party if the loan or debt or other obligation was contracted, used, or intended, in whole or in part, for use in an election campaign or used or intended for the payment of such debts or obligations of a candidate or committee previously incurred, or which was made or received by a committee;

JOINT STIP. EXHIBIT 1

(f) Funds received by a committee which are transferred to such committee from another committee or other source, except funds received by a candidate committee as a transfer of funds from another candidate committee controlled by the same candidate but such transfer shall be included in the disclosure reports;

(g) Facilities, office space or equipment supplied by any person to a candidate or committee without charge or at reduced charges, except gratuitous space for meeting purposes which is made available regularly to the public, including other candidates or committees, on an equal basis for similar purposes on the same conditions; and

(h) The direct or indirect payment by any person, other than a connected organization, of the costs of establishing, administering, or maintaining a committee, including legal, accounting and computer services, fund raising and solicitation of contributions for a committee.

(8) "Contribution" does not include:

(a) Ordinary home hospitality or services provided without compensation by individuals volunteering their time in support of or in opposition to a candidate, committee or ballot measure, nor the necessary and ordinary personal expenses of such volunteers incidental to the performance of voluntary activities, so long as no compensation is directly or indirectly asked or given;

(b) An offer or tender of a contribution which is expressly and unconditionally rejected and returned to the donor within ten business days after receipt or transmitted to the state treasurer;

(c) Interest earned on deposit of committee funds; or

(d) The costs incurred by any connected organization listed pursuant to subdivision (4) of subsection 5 of section 130.021, RSMo, as amended from time to time, for establishing, administering or maintaining a committee, or for the solicitation of contributions to a committee which solicitation is solely directed or related to the members, officers, directors, employees or security holders of the connected organization.

(9) "County", any one of the several counties of this state or the city of St. Louis.

(10) "Disclosure report", an itemized report of receipts, expenditures and incurred indebtedness which is prepared on forms approved by the Missouri ethics commission and filed at the times and places prescribed.

(11) "Election", any primary, general or special election held to nominate or elect an individual to public office, to retain or recall an elected officeholder or to submit a ballot measure to the voters, and any caucus or other meeting of a political party or a political party committee at which that party's candidate or candidates for public office are officially selected. A primary election and the succeeding general election shall be considered separate elections.

(12) "Expenditure", a payment, advance, conveyance, deposit, donation or contribution of money or anything of value for the purpose of supporting or opposing the nomination or election of any candidate for public office or the qualification or passage of any ballot measure or for the support of any committee which in turn supports or opposes any candidate or ballot measure or for the purpose of paying a previously incurred campaign debt or obligation of a candidate or the debts or obligations of a committee; a payment, or an agreement or promise to pay, money or anything of value, including a candidate's own money or property, for the purchase of goods, services, property, facilities or anything of value for the purpose of supporting or opposing the nomination or election of any candidate for public office or the qualification or passage of any ballot measure or for the support of any committee which in turn supports or opposes any candidate or ballot measure or for the purpose of paying a previously incurred campaign debt or obligation of a candidate or the debts or obligations of a committee. An expenditure of anything of value shall be deemed to have a money value equivalent to the fair market value. "Expenditure" includes, but is not limited to:

(a) Payment by anyone other than a committee for services of another person rendered to such committee;

(b) The purchase of tickets, goods, services or political merchandise in connection with any testimonial affair or fund-raising event of or for candidates or committees, or the purchase of advertising in a brochure, booklet, program or pamphlet of a candidate or committee;

(c) The transfer of funds by one committee to another committee; and

**107**

JOINT STIP. EXHIBIT 1

Electronically Filed - WESTERN DISTRICT CT OF APPEALS - September 01, 2016 - 11:35 AM

(d) The direct or indirect payment by any person, other than a connected organization for a committee, of the costs of establishing, administering or maintaining a committee, including legal, accounting and computer services, fund raising and solicitation of contributions for a committee.

(13) "Expenditure" does not include:

(a) Any news story, commentary or editorial which is broadcast or published by any broadcasting station, newspaper, magazine or other periodical without charge to the candidate or to any person supporting or opposing a candidate or ballot measure;

(b) The internal dissemination by any membership organization, proprietorship, labor organization, corporation, association or other entity of information advocating the election or defeat of a candidate or candidates or the passage or defeat of a ballot measure or measures to its directors, officers, members, employees or security holders, provided that the cost incurred is reported pursuant to subsection 2 of section 130.051, RSMo, as amended from time to time;

(c) Repayment of a loan, but such repayment shall be indicated in required reports;

(d) The rendering of voluntary personal services by an individual of the sort commonly performed by volunteer campaign workers and the payment by such individual of the individual's necessary and ordinary personal expenses incidental to such volunteer activity, provided no compensation is, directly or indirectly, asked or given;

(e) The costs incurred by any connected organization listed pursuant to subdivision (4) of subsection 5 of section 130.021, RSMo, as amended from time to time, for establishing, administering or maintaining a committee, or for the solicitation of contributions to a committee which solicitation is solely directed or related to the members, officers, directors, employees or security holders of the connected organization; or

(f) The use of a candidate's own money or property for expense of the candidate's personal food, lodging, travel, and payment of any fee necessary to the filing for public office, if such expense is not reimbursed to the candidate from any source.

(14) "Exploratory committees", a committee which shall be formed by an individual to receive contributions and make expenditures on behalf of this individual in determining whether or not the individual seeks elective office. Such committee shall terminate no later than December thirty-first of the year prior to the general election for the possible office.

(15) "Fund-raising event", an event such as a dinner, luncheon, reception, coffee, testimonial, rally, auction or similar affair through which contributions are solicited or received by such means as the purchase of tickets, payment of attendance fees, donations for prizes or through the purchase of goods, services or political merchandise.

(16) "In-kind contribution" or "in-kind expenditure", a contribution or expenditure in a form other than money.

(17) "Labor organization", any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(18) "Loan", a transfer of money, property or anything of ascertainable monetary value in exchange for an obligation, conditional or not, to repay in whole or in part and which was contracted, used, or intended for use in an election campaign, or which was made or received by a committee or which was contracted, used, or intended to pay previously incurred campaign debts or obligations of a candidate or the debts or obligations of a committee.

(19) "Person", an individual, group of individuals, corporation, partnership, committee, proprietorship, joint venture, any department, agency, board, institution or other entity of the state or any of its political subdivisions, union, labor organization, trade or professional or business association, association, political party or any executive committee thereof, or any other club or organization however constituted or any officer or employee of such entity acting in the person's official capacity.

(20) "Political action committee", a committee of continuing existence which is not formed, controlled or directed by a candidate, and is a committee other than a candidate committee, political party committee, campaign committee, exploratory committee, or debt service committee, whose primary or incidental purpose is to receive contributions or make expenditures to influence or attempt to influence the action of voters whether or not a particular candidate or candidates or a particular ballot measure or measures to be supported or opposed has been determined at the time the committee is required to file

**108**

JOINT STIP. EXHIBIT 1

any statement or report pursuant to the provisions of this chapter. Such a committee includes, but is not limited to, any committee organized or sponsored by a business entity, a labor organization, a professional association, a trade or business association, a club or other organization and whose primary purpose is to solicit, accept and use contributions from the members, employees or stockholders of such entity and any individual or group of individuals who accept and use contributions to influence or attempt to influence the action of voters. Such committee shall be formed no later than sixty days prior to the election for which the committee receives contributions or makes expenditures.

(21) "Political merchandise", goods such as bumper stickers, pins, hats, ties, jewelry, literature, or other items sold or distributed at a fund-raising event or to the general public for publicity or for the purpose of raising funds to be used in supporting or opposing a candidate for nomination or election or in supporting or opposing the qualification, passage or defeat of a ballot measure.

(22) "Political party", a political party which has the right under law to have the names of its candidates listed on the ballot in a general election.

(23) "Political party committee", a state, district, county, city, or area committee of a political party, as defined in section 115.603, RSMo, as amended from time to time, which may be organized as a not-for-profit corporation under Missouri law, and which committee is of continuing existence, and has the primary or incidental purpose of receiving contributions and making expenditures to influence or attempt to influence the action of voters on behalf of the political party.

(24) "Public office" or "office", any state, judicial, county, municipal, school or other district, ward, township, or other political subdivision office or any political party office which is filled by a vote of registered voters.

(25) "Write-in candidate", an individual whose name is not printed on the ballot but who otherwise meets the definition of candidate in subdivision (2) of this section.

8. The provisions of this section are self-executing. All of the provisions of this section are severable. If any provision of this section is found by a court of competent jurisdiction to be unconstitutional or unconstitutionally enacted, the remaining provisions of this section shall be and remain valid.